# MINNIE TRIGG v. WATER, LIGHT & TRANSIT COMPANY, Appellant.

### Division One, December 23, 1908.

1. **NEGLIGENCE: Man Lying Near Track: Demurrer.** Where the motorman, two hundred feet before his car reached the injured man, saw him lying outside the rails on the track embankment, with the lower part of the body concealed by weeds and his head near to or between the ends of the ties and low enough down not to have been struck by the car had he remained still, and supposed he was a "clump of dirt," it was not his duty to stop the car in time to avoid hitting him.   The humanitarian doctrine does not apply to such a case.   [Distinguishing Werner v. Railroad, 81 Mo. 368, and Isabel v. Railroad, 60 Mo. 475.]

2. ————: ————: **Motorman's Duty to Look.** If the track was a portion of the public street deceased had a technical right to be at the place where struck, and it was the duty of the motorman to be careful to look out for all persons who might be occupying that portion of the street to be occupied by the car; and the same duty rested upon the motorman to look out for anyone on a track which by long use had been a general foot-path.   But it was not the duty of the motorman to look out for a man lying outside the rails on the track's embankment which the evidence fails to show had ever been used as a foot-path or to lie upon.

3. ————: Reckless Speed: Twelve to Twenty Miles. A speed
of a street car of from twelve to twenty miles an hour, on a
dark night, over a track elevated upon an embankment three
feet high and which had been used as a footpath, at a point
where there were few residences and practically in the coun-
try, and where there was but little, if any, travel at that time
of the night, is not such a dangerous and reckless rate of
speed as, in the absence of an ordinance regulating the speed,
would authorize the jury to find defendant guilty of negligence
in striking a man lying outside the rails on the embankment.

4. ————: ————: Contributory Negligence. Even though the
speed at which the car was being run was negligent, the plain-
tiff cannot recover for injuries received by her husband as he
lay outside the rails on the embankment, if he was guilty of
negligence contributing to his injury and plaintiff fails to
show that, after the motorman saw his dangerous position,
or by the exercise of ordinary care could have discovered it,
defendant by the exercise of reasonable care could have avoided
injuring him.

Appeal from Carroll Circuit Court.—*Hon. Jno. P.
Butler,* Judge.

REVERSED AND REMANDED (*with directions*).

*Lozier, Morris & Atwood* and *Jones & Conkling*
for appellant.

(1) It was error to set aside the verdict of the
jury and grant plaintiff a new trial. Where the ver-
dict and finding of the jury is for the right party
and where plaintiff's own evidence shows that she is
not entitled to recover, the order granting a new trial
will be set aside whether the instructions are right
or wrong. Ayers v. Railroad, 190 Mo. 228; Markowitz
v. Railroad, 186 Mo. 350; Carrier v. Railroad, 175 Mo.
470; Vogg v. Railroad, 138 Mo. 172; Holwerson v.
Railroad, 157 Mo. 216; Homuth v. Railroad, 129 Mo.
642; Bartley v. Railroad, 148 Mo. 142; Fox v. Windes,
127 Mo. 514; Carr v. Railroad, 195 Mo. 214; Moore
v. Railroad, 176 Mo. 545; Zumault v. Railroad, 175 Mo.
290; Mockowik v. Railroad, 196 Mo. 550. (2) Even
if the track had been so habitually used by pedestrians

as a footpath that it became and was the duty of defendant's employees to anticipate the presence of pedestrians on the track, it was their duty to anticipate the presence of such footmen only as were using the track as a footpath and not those who were using the track or the side thereof as a bed to sleep upon. There is no allegation in the petition nor is there any proof that it was an habitual custom of long standing and acquiesced in with the knowledge and tacit consent of defendant for people to become intoxicated and use the side of defendant's railroad dump as a bed upon which to sleep. Ayers v. Railroad, 190 Mo. 228; Yarnall v. Railroad, 75 Mo. 575; Thompson on Negligence, secs. 1791, 1792; Beach on Cont. Negl., sec. 391; Vizacchero v. Railroad, 69 L. R. A. 188. (3) The court erred in overruling the demurer to the evidence tendered by defendant at the close of plaintiff's case and refusing to give the peremptory instruction asked by defendant at the close of all the evidence in the case, for the reason that plaintiff's own evidence showed she had no cause of action and the whole of the evidence showed no liability on the part of defendant. Deceased was guilty of negligence which was the sole and proximate cause of the injury. Defendant was not negligent. Davies v. Railroad, 159 Mo. 6; Mockowik v. Railroad, 196 Mo. 550; Moore v. Railroad, 176 Mo. 547; Petty v. Railroad, 179 Mo. 666; Reno v. Railroad, 180 Mo. 489; Aldrich v. Railroad, 101 Mo. App. 77; Markowitz v. Railroad, 186 Mo. 350; Roenfeldt v. Railroad, 180 Mo. 554; Ries v. Railroad, 179 Mo. 7; Shanks v. Railroad, 101 Mo. App. 707; Zumault v. Railroad, 175 Mo. 290; Abbott v. Railroad, 121 Mo. App. 582; Cole v. Railroad, 121 Mo. App. 605; Bennett v. Railroad, 122 Mo. App. 704. (4) Even admitting that at the point where deceased was struck and killed, at the time and for a long time prior thereto defendant's railway track had been used by pedestrians as a footpath and so habitually as to create a duty on the part

of defendant's servants, agents and employees in operating the cars to anticipate the presence of pedestrians and to be on the lookout for them, yet defendant was not bound to anticipate that a person would be lying on the track or on the side of the dump thereof asleep in an intoxicated condition. Ayers v. Railroad, 190 Mo. 228; McGauley v. Railroad, 179 Mo. 583; Coatney v. Railroad, 151 Mo. 35; Yarnall v. Railroad, 75 Mo. 575; Lyons v. Railroad, 59 S. W. 507; Hughes v. Railroad, 67 S. W. 984; Kendall v. Railroad, 123 Ga. 213; Thompson on Neg., secs. 1789, 1790, 1791, 1792; Beach on Cont. Neg., secs. 391, 392; Vizacchero v. Railroad, 69 L. R. A. 188; Parrish v. Railroad, 40 L. R. A. 564. (5) There is no evidence in the record that the car at the time of the accident was being run and operated at a reckless, unusual or dangerous rate of speed. In fact, the evidence all shows that the car was being run at the usual and ordinary rate of speed—a safe rate of speed. Koegle v. Railroad, 181 Mo. 379; Schmidt v. Railroad, 191 Mo. 315; Holwerson v. Railroad, 157 Mo. 216; Stotler v. Railroad, 200 Mo. 125; Lawson on Expert & Opinion Ev. (2 Ed.), 508; Rogers on Expert Testimony (2 Ed.), 245. (6) Plaintiff's third instruction was properly refused and defendant's second instruction properly given. There was no evidence upon which to base plaintiff's third instruction. There was a total failure of proof in support of the allegation of the petition that the car at the time of the accident was being run at a reckless and dangerous rate of speed, hence the giving of defendant's second instruction was proper. Stotler v. Railroad, 200 Mo. 107; Petty v. Railroad, 179 Mo. 666; Campbell v. Railroad, 175 Mo. 161; Helm v. Railroad, 185 Mo. 122; Holwerson v. Railroad, 157 Mo. 216; Railroad v. Moseley, 57 Fed. 921; Holland v. Railroad, 109 S. W. 19; Koegle v. Railroad, 181 Mo. 379; Schmidt v. Railroad, 191 Mo. 315.

*Russell Kneisley* and *Busby & Busby* for respondent.

(1) In reviewing the action of the trial court upon the demurrer, respondent is entitled to have her evidence taken as true; and to have appellant's contradictory evidence taken as untrue; and is also entitled to every reasonable and favorable inference of fact naturally deducible from her evidence. Forbes v. Dunnavant, 198 Mo. 199. A demurrer to the evidence admits every fact which the jurors might infer if evidence were before them. Moore v. Railroad, 194 Mo. 9. (2) The demurrer was properly overruled, because the motorman in charge of the car actually saw deceased upon or near the track, in position of danger, in time to avoid hitting him; at least, this fact may be inferred from the evidence. Appellant argues that the motorman was not required to check or stop his car simply because he saw an object upon or near the track which he thought was a clump of dirt; but this same motorman had been in the employ of defendant three years, making four trips each night, and was familiar with the track, and testified that he knew people frequented the track at all hours of the night, and he had every reason to expect persons upon the track at time and place of collision, and when he saw an object ahead the size of a man upon or in dangerous proximity to the track, it was negligence for him to drive ahead with indifference, until he got within twenty-five or thirty feet of the object, and too close to stop the car before striking it. Werner v. Railroad, 81 Mo. 373; Isabel v. Railroad, 60 Mo. 482. (3) The demurrer was properly overruled also because the motorman, by the exercise of ordinary care, could have seen Trigg in a position of danger in time to avoid striking him; at least, this fact may be inferred from the evidence. Abbott v. Railroad, 121 Mo. App. 584; Eppstein v. Railroad, 197 Mo. 720; Moore v.

Railroad, 194 Mo. 1; Klockenbrink v. Railroad, 81 Mo. App. 356; Kolb v. Railroad, 102 Mo. App. 143; Mayes v. Railroad, 121 Mo. App. 618. And although Trigg may have been lying down in a state of intoxication, yet if appellant, by the exercise of ordinary care, could have saved him from his own negligence, and negligently failed to do so, then it is liable. Werner v. Railroad, 81 Mo. 368; Fearons v. Railroad, 180 Mo. 213; Shanks v. Railroad, 101 Mo. App. 707. (4) (a) The trial court after seeing and hearing the witnesses, was of the opinion that respondent's case was meritorius, and that the evidence tended to prove an unusual and reckless rate of speed at time of the collision, which the jury should have taken into consideration in determining whether appellant was negligent in operation of its car, and that the court committed error against respondent in refusing to permit the jury to consider this evidence, by refusing respondent's instruction 3, and in giving appellant's instruction 2, and therefore granted respondent a new trial. "The rule of law in Missouri has been announced with incessant repetition, that the function or duty of granting a new trial rests peculiarly and specially within the sound discretion of the trial court, and unless it is manifest and apparent that its judicial discretion has been abused or that injustice has been done, its ruling in that regard will not be disturbed by an appellate court." Farrell v. Railroad, 103 Mo. App. 457; Fitzjohn v. Railroad, 183 Mo. 77. (b) If the order granting the new trial can be sustained upon any ground assigned in the motion for new trial, the judgment should be affirmed in the appellate court. Emmons v. Quade, 176 Mo. 22; Hewitt v. Steele, 118 Mo. 463; Lovell v. Davis, 52 Mo. App. 342. (c) The testimony of all the witnesses show that Trigg was killed in a public street at a point frequented at all hours, day and night, by men, women and children, and that the car, in approaching this point in the night

time, was run at the reckless rate of fifteen or twenty miles an hour, without warning of its approach. The testimony of the motorman himself shows that he had every reason to expect persons on or near track, and yet ran the car at fifteen or twenty miles an hour without warning. The court by giving a peremptory instruction that there was no evidence that the car was run at reckless rate of speed not only deprived respondent of an issue upon which she was entitled to go to the jury but thereby licensed appellant to take advantage of its own negligence by saying to the jury that the car could not be checked or stopped at the rate it was going. Appellant is not entitled to hide behind a negligent rate of speed. Morgan v. Railroad, 159 Mo. 266; Campbell v. Railroad, 59 Mo. App. 155; Duffy v. Railroad, 19 Mo. 383; Klockenbrink v. Railroad, 81 Mo. App. 359; Stepp v. Railroad, 85 Mo. 234; Wasson v. McCook, 80 Mo. App. 489; Heinzle v. Railroad, 182 Mo. 558.

WOODSON, J.—The plaintiff instituted this suit in the circuit court of Carroll county against the defendant to recover the sum of $5,000 damages sustained by her for the alleged negligence in killing her husband, Charles Trigg. There was a trial had before the court and jury, which resulted in a verdict and judgment for defendant, and in due time plaintiff filed her motion for a new trial, which was by the court sustained. From this order of the court sustaining said motion, the defendant duly appealed the cause to this court.

The petition in substance charges that the accident which resulted in the death of Charles Trigg, respondent's husband, occurred on South Main street in the town of Carrollton, where the track of appellant was practically straight, the view unobstructed for a long distance; that pedestrians and footmen had for a long time prior thereto used said track travel-

ing between the city of Carrollton and the town of South Carrollton; that appellant had knowledge of such user; that at the time of the accident the said Charles Trigg was upon appellant's railway track in a sitting or reclining position; that appellant's servants and employees seeing, or by the exercise of reasonable care and diligence could have seen, him in such dangerous position in time to have averted the injury and accident which resulted in his death, but negligently conducting themselves in the premises, and unskillfully managing and operating said car, and failing to sound the usual and ordinary danger signals, and running and propelling said car at a reckless and unusual rate of speed, ran its car against the said Charles Trigg and wounded, cut and bruised him, from the effects of which he died.

The answer contained, first, a general denial of the allegations of the petition. Then after admitting the incorporation of defendant, specially pleaded contributory negligence as a defense to the action alleged in plaintiff's petition in this:

FIRST. That respondent's husband, Charles Trigg, at a late hour of the night voluntarily went upon appellant's railway track and assumed a place of danger by lying down upon the dump or embankment upon which the tracks of the railway were laid, in dangerous proximity to cars passing on said track, and neglected to look and listen for the approach of cars on said track, when by looking he could have seen, or listening could have heard, the approach of cars in time to have gotten to a place of safety.

SECOND. That said Charles Trigg was in such a state of intoxication that he did not exercise ordinary care, prudence and caution to prevent and avoid danger to himself.

It appears that the parties went to trial without a reply having been filed.

The facts of the case as disclosed by the record are substantially as follows:

At the time of the injury and death of Charles Trigg he was the lawful husband of the plaintiff; that the defendant was a street railway corporation owning and operating a street railway with electric power in the town of Carrollton, a city of about four thousand inhabitants; the track was a single one, extending from the public square in said city south to the Wabash Railway Company's depot, located in South Carrollton, about one mile from the public square. The depots of the Burlington Railway and Santa Fe are situated on the line of said street railway. The principal if not the only traffic defendant is engaged in was in carrying passengers to and from Carrollton to said depots. From the intersection of the tract of the street railway with those of the Santa Fe for a distance of some four hundred and fifty feet south, the former runs along the west side of South Main street, and is located on an embankment which is about three feet in height, and is about the same distance above the grade of the traveled portion of the street. About four hundred feet south of the Santa Fe crossing the street railway track has a slight curve, about three degrees, to the southwest, leaving the street and crossing the Wakenda creek bottom west of the Wabash depot. The Santa Fe depot is about one-half mile from South Carrollton; and the ground between the two is a low bottom, and the street railway track is located upon trestles much of that distance. There are but three houses located in this bottom along said street and track. The traveled portion of Main street lies east of the street railway track and runs almost parallel with it and due south across the Wabash tracks a short distance east of the Wabash depot. Pedestrians, with the knowledge and acquiescence of de-

fendant, had for years prior to the time of the injury used said street car track as a path or passway between Carrollton and South Carrollton. The injury to Charles Trigg occurred at night on September 10, 1904, about twelve o'clock, at a point on the east side of the track about four hundred and fifty feet south of the intersection of the street railway track with those of the Santa Fe.

The car which struck deceased had been to the Wabash depot to meet passengers who got off the Wabash train, due there between eleven and twelve o'clock. There were many passengers who got off that train and took passage on the street car for Carrollton. Between the time the street car passed over the Santa Fe tracks going south to the Wabash depot and the time it returned with said passengers, a train from the west came into Carrollton on the Santa Fe road. Deceased resided in Carrollton and had been at Norborne that day, and had returned home on the Santa Fe train before mentioned. When Trigg left the train at Carrollton he was in a state of intoxication. He staggered about the platform and then went east in the direction of Main street, and turned south on Main street in the direction of the place where the injury occurred. He was seen no more until the injury occurred. Mr. Trigg lay down on the east side of the embankment at the point where the street car track begins to curve to the southwest and where it is laid along and upon the embankment before mentioned. He was lying on his back with his head toward the top of the embankment between or near the east end of two cross ties, with his feet projecting down the slope of the embankment towards the traveled portion of Main street. The ends of the ties extended beyond the east rail some sixteen inches. The space between the two ties was not well filled with ballast, thereby leaving a depression, the exact depth of which is not clearly shown. No portion of his body extended much, if

any, above the top surface of the east end of the ties.
Weeds had grown up along the east slope of the embankment but had been cut for a distance of some
twelve inches east of the east end of the ties, but the
evidence fails to show just how high the weeds were
at the time of the accident, except that they obstructed
the view of his body which was lying east of the strip
from which the weeds had been cut.

As the car was returning from the Wabash depot
in South Carrollton with its load of passengers it was
running from twelve to twenty miles an hour; and
when it reached a point about twenty-five feet from
where Trigg was lying the motorman saw him in the
position before stated.   The plaintiff introduced evidence tending to show that the motorman in charge
of said car said immediately after the accident occurred
that he saw deceased when the car was about one hundred and seventy-five or two hundred feet from where
he was lying but that he thought he was a clump of
dirt lying by the side of the track.   That immediately
upon discovering Trigg the motorman applied the
brakes and other appliances which were at his command and exerted every effort within his power to
stop the car and avert the injury.   The efforts put
forth by him were so effective that the speed of the car
was so greatly and suddenly slackened that it was perceptibly noticed by all the passengers and caused the
car to jump and bound as if running over the ties,
and so alarmed some of them that they left their seats
with a view of leaving the car.   As the car approached
Trigg no portion of his body was in a position that
could have been struck by the car, had he remained
still, for the reason that his head was several inches
below the portions of the car which projected beyond
the rail, and nearer the outer line of the east side of
the car.   No one saw him move, but after the injury
he was found lying with his face almost down with a
deep wound upon the top part of the back of the head

and some slight bruises on his right shoulder. The injury on the back of the head fractured his skull and killed him almost instantly. The motorman was at all times at his place of duty and was keeping a vigilant outlook along the track in front of him, which was illuminated by an electric head light attached to the front end of the car. While all of the witnesses testified that the car was running from twelve to twenty miles an hour when the motorman discovered Trigg, yet all of them testified that said speed was the usual and ordinary speed the car generally ran at the place of the accident, and that there was nothing in the rate of speed which indicated to any of them that the car was recklessly run or operated. After the motorman discovered the dangerous position in which Trigg was lying, it was impossible for him to stop or so slacken the car as to prevent the injury.

The injury occurred at the point where the street railway track curves to the southwest. The east rail at that point was one or two inches higher than the west rail. The evidence tended to show that the height of the east rail and the shadow cast thereby, and the curve in the track prevented the rays of the headlight falling full upon Trigg, and that in consequence thereof he was more or less obscured from the sight of the motorman, as the car approached him from the south.

The car in passing over the trestles made a great deal of noise and could have been heard for half a mile or more, and there was nothing to have prevented deceased from hearing the same or from having seen the headlight of the car had he been looking and listening.

Where counsel for plaintiff contends that any of the facts before stated are not supported by the evidence we will consider same later in the opinion.

At the close of plaintiff's case, defendant tendered a demurrer to the evidence, which was by the court overruled, and again at the close of all the evidence

in the case defendant requested a peremptory instruction requiring the jury to find and return a verdict for the defendant, which was also by the court refused.

The court refused to give the third instruction requested by plaintiff, which is as follows:

"3.   The court instructs the jury that if they believe from the evidence that the track of the defendant at the place where Charles Trigg was struck and killed was laid along and upon a public street in the city of Carrollton, and that defendant's track at such point was on the 10th day of September, 1904, and for a long time prior thereto had been frequented by persons and used by pedestrians as a passway or footpath with the knowledge of defendant and its employees in charge of its cars, and that the car that struck and killed Charles Trigg in approaching such point upon the track was being run at unusual and reckless rate of speed and that no warning of the approach of said car was given by the sounding of the gong or bell thereon, then the jury may take into consideration all such facts as tending to show and prove negligence on the part of defendant in the operation of said car."

On behalf of the defendant, the court instructed the jury as follows:

"2.   The court instructs the jury that there is no evidence in this case that the car at the time deceased was killed was being run at an improper or reckless rate of speed, and they will conclusively presume that the car was being run at a safe rate of speed at the time the accident occurred."

Because of the refusal of the court to give plaintiff's third instruction above quoted, and because of the giving of the second instruction for defendant, plaintiff's motion for a new trial was by the court sustained and a new trial ordered, from which order and ruling appellant prosecutes this appeal.

The errors assigned are as follows:

1st.   The court erred in overruling defendant's demurrer to the evidence.

2d.   The court erred in not giving defendant's. peremptory instruction tendered by defendant at the close of all of the evidence in the case.

3d.   The court committed error in sustaining plaintiff's motion for a new trial.

I.   The first insistence of counsel for appellant challenges the correctness of the action of the trial court in refusing to give the demurrer to the evidence asked at the close of respondent's case.   It is the contention of appellant that the record discloses beyond question that the deceased was guilty of negligence which contributed directly to his injury and death, and for that reason respondent failed to make out a prima-facie case, and, consequently, the case should have been taken from the jury.

Counsel for respondent do not dispute the fact that deceased was guilty of contributory negligence, but upon the contrary he was guilty thereof, and seek to escape the effect of that concession by interposing the "humanitarian doctrine."   In fact, the petition is bottomed upon that doctrine.

It is earnestly insisted by counsel for respondent that the testimony introduced in her behalf tended to prove that the motorman who was in charge of the car which collided with her deceased husband saw him lying in the dangerous position in which he was struck about the time the car left the north trestle, which was about two hundred feet south of the point where deceased was struck, and that by the use of ordinary care he could have stopped the car in time to have prevented the injury or could have given him timely warning of its approach, which would have caused him to have moved to a place of safety before the car reached him.

The substance of that evidence was as follows: That a few seconds after the accident occurred, and while the motorman and the passengers were standing there discussing the matter, the motorman stated in the presence of some of them, that about the time the car left the north end of the trestle he said, in substance, that he saw an object ahead and thought it was a clump of dirt, and as soon as he got close enough to distinguish what it was he reversed his car, but that he was then too close to deceased to stop it in time to avoid striking him. Upon objections made by counsel for appellant, other testimony of similar import was by the court excluded, but as that admitted was sufficient to properly present the legal proposition involved, we will not discuss the action of the court in so excluding it.

There is other evidence in the record which tends to show that had the motorman attempted to stop the car when he first discovered the object lying up against the embankment, he could have done so in time to have averted the injury, and having failed to do so, he was guilty of such negligence as authorizes a recovery for respondent.

Her counsel insist that the evidence of this case brings it within the spirit of the cases of Werner v. Railroad, 81 Mo. 368, and Isabel v. Railroad, 60 Mo. 475.

In the former case the evidence showed that the deceased was lying between the rails of a street car track on Olive street, in the city of St. Louis, and that the driver of the car saw him lying there in time to have stopped the car before it struck him, but in the darkness of the night he mistook him for a sack of oats and made no attempt to stop the car until it was too late to do so. In discussing that case this court on pages 373, 374 and 375 used the following language:

"If the darkness of the night had prevented the driver from seeing the object on the track, it may be conceded that no negligence would be imputed to him; but the fallacy of the argument lies in the deduction from the fact that a total obscuration of his sight would release him from the charge of negligence, that a partial obscuration to the extent it went and the effect it produced would relieve him of the charge. This is a *non sequitur*. There would have been nothing to call into activity more care and prudence on the part of the driver than was necessary to guide the horses when no danger was apparent, or reasonably apprehended, but when he could see an object on the track as large as a sack of oats, he had reason to apprehend danger, not only to his passengers and the property in his care, but to strangers or their property, and to hold that he might drive on with the same indifference as if he had seen nothing on the track, because he could not discern what it was, would be to sanction recklessness and ignore the duty of carriers to avoid injuring persons and property when aware of the danger to which they are exposed, or when they have reasonable grounds for an apprehension that by proceeding as usual with their vehicles, injury will be inflicted upon persons or property. Counsel indulges in a criticism of the cases in which this court has held that if the negligence of a defendant which contributed directly to cause the injury, occurred after the danger in which the injured party had placed himself by his own negligence, was, or by the exercise of reasonable care, might have been, discovered by the defendant in time to have averted the injury, then defendant is liable, however gross the negligence of the injured party may have been in placing himself in such position of danger. Such is the well-established doctrine of this court. [Isabel v. Railroad, 60 Mo. 475; Harlan v. Railroad, 65 Mo. 26; Zimmerman v. Railroad, 71 Mo. 484; Frick v. Railroad, 75 Mo. 595;

Kelley v. Railroad, 75 Mo. 140.] And the case at bar is an apt illustration of the wisdom of the rule. In a populous city, on one of its public thoroughfares which pedestrians are crossing at all hours of the day and night, the driver of a street car on a dark night discovers an object fifteen feet ahead of his horses, which he supposes to be a bundle of hay or a sack of oats, with but little reason to suppose, and which he could have ascertained to be a human being if he had checked his horses and driven slowly up to the object, instead of recklessly driving ahead, looking, not at the object, but over his horses' heads, not endeavoring to determine what the object was, but indifferent to its character, not stopping the car or checking its speed until he had run over and killed a human being, when the exercise of ordinary care and prudence involving a delay of only ten or fifteen seconds would have disclosed that it was a human being, and saved a human life. It is contended by the defendant's counsel that the discovery of the danger in which Werner had placed himself, and the infliction of the injury, were simultaneous, and that, therefore, this doctrine has no application. The facts of the case, as testified to by defendant's witness, do not sustain that theory. The driver testified that he saw the object fifteen feet ahead of the horses. That he could have stopped the car in two feet; so that he had ample time, after seeing the object on the track, to stop the car before the horses reached it.''

In the latter case a child twenty-one months old escaped from its keeper and had strayed upon a railroad track and sat down between the rails; the agents in charge of the train saw the child in time to have avoided the injury had they exercised ordinary care in doing so, but they mistook the child for a dog and made no attempt to stop the train until it was too late to prevent the injury. In discussing that case this court, on pages 482 and 483, said:

"Moreover, it is clearly shown that the engineer and fireman discovered the infant, and had abundance of time to have stopped the train and saved its life; but they debated as to what it really was till it was too late. Might they not, by a close scrutiny and a proper observance, which it was their duty to give when they discovered an object on the track, have discovered that it was a child? The testimony is conclusive that the child was dressed in red, and that would have very easily distinguished it from a hog or dog. The instruction, if it was intended to convey the idea that the employees, by using ordinary skill and caution after they observed the object on the track, could have distinguished that it was a child, was entirely proper. . . .

"The case presented, then, is, that the persons running the train saw something on the track in time to avoid collision or injury; and if, after they observed it they could, by the exercise of that care and caution which the law imposes upon them, have perceived that it was a child, in time to stop the train, and they were negligent, the company is liable."

The facts of those two cases are so radically different from those of this case that the law as there enunciated is inapplicable to the facts of this one. In each of those cases the injured person was lying between the rails of the track where obstructions of no kind had a right to be, neither man nor beast nor inanimate objects of any kind, and the mere fact that he or it was in a position where the train necessarily had to pass over imposed an imperative duty upon those in charge of the train after observing their position, or by the exercise of ordinary care could have discovered it, to have used proper care to have avoided the injury. A railroad company has no right to run its cars over man or beast, nor over any species of personal property; and when those in charge of a train saw those persons on the track, it was their duty to

stop the train, or to use such other appliances as were at their disposal to prevent an injury, and it was no excuse for their failure to do so to say they thought the one was a sack of oats and the other was a dog, for the reason they had no more right to kill the dog or destroy the oats than they had to injure a person. The difference being the degree of care to be exercised and not a difference in the principle applicable to each. But in the case at bar Mr. Trigg was not lying between the rails of defendant's track where the car must of necessity have passed over him, nor did the motorman believe in this case, as the employees did in those cases, that the object he saw lying by the side of the track was a person or property of any kind, but upon the contrary all the evidence upon that point shows conclusively that he thought it was a clump of dirt. That being true, clearly he was under no legal duty to stop the car or slacken the speed thereof before reaching it. If he had done either, or had he sounded the gong, when he really believed the object was a clump of dirt, his act would have been indicative of a flighty mind rather than the act of a prudent person.

We are, therefore, clearly of the opinion that the rule announced in those cases is not controlling in the case at bar.

II. It is next contended by counsel for respondent that since the evidence discloses the fact that pedestrians had, with the knowledge and acquiescence of appellant, used its track as a foot path for years in going to and returning from South Carrollton, those who were in charge of the car which struck Mr. Trigg should have apprehended persons were likely to have been upon the track, and that it was their duty to have kept a constant outlook for those who might have been upon the track, and to have used all reasonable care and caution to have prevented injury to them; and

that having failed to do so, the company is liable for said injury.

Counsel for appellant concede the law to be as contended for by counsel for respondent, but insist that it has no application to the facts of this case, for the reason that the evidence totally fails to show Mr. Trigg was using the foot-path at the time the accident occurred, and that he was several feet east of it, lying down on his back against the embankment upon which the street car track and path were located with his head resting in a depression of several inches in depth, near to or between the ends of two cross-ties, and that his feet extended downward and eastward from the track, with weeds obstructing the view of his body excepting portions of his head.

We have carefully read this voluminous record of more than five hundred pages of printed matter and have failed to find any evidence whatever therein which tends in the slightest degree to disprove appellant's contention as to how the injury occurred, without it can be said that the physical facts of the case as they existed immediately after the accident occurred tend to disprove it, that is, the position the body was in at the time, the location of the wound upon the head, the place where deceased's hat was found, and the blood and hair found upon the roadway and rails. If these physical facts were viewed alone they would indicate that Mr. Trigg was sitting up or was leaning against the east rail when struck and killed by the car, and that if the servants in charge of the car had exercised ordinary care in keeping an outlook for him, they could have discovered his dangerous position in ample time in which to have stopped the car and thereby averted the injury; but when viewed in the light of the testimony of all of the eye-witnesses as to the position Mr. Trigg was in just before he was struck, and the fact that he had been struck by the car and killed before all other witnesses saw his body, deprives their

testimony of all weight it otherwise would have been
entitled to, for the reason that both propositions may
have been true, and doubtless were, due to the fact
that when the car struck deceased, going at the rate
of speed at which the evidence showed it was running,
it must have thrown the body in the position in which
it was found immediately after the accident, and all
the other facts mentioned were incidents to the blow
and of the injury which followed. In that view of the
evidence there is no conflict between the testimony
of any of the witnesses, but it harmonizes all the testi-
mony in the case.

We must, therefore, hold that the uncontradicted
evidence shows that deceased was not using the path
mentioned in the evidence when struck, and that there
is no evidence that pedestrians or any one else ever
used the embankment upon which Mr. Trigg was kill-
ed for any purpose whatever.

The case at bar is on all-fours with the case of
Ayers v. Railroad, 190 Mo. 228, with the exception that
in that case the accident occurred on a bright, clear
day, while this one occurred at night, and that there
was no evidence in that case which tended to show the
injured party was obscured from the view of the en-
gineer by weeds or other obstruction, as was the fact
in this case. These facts, however, are only additional
reasons why the respondent should not be entitled to
recover. In discussing that case, this court, on pages
237 and 238, through VALLIANT, J., said:

"There is no statute requiring defendant to give
a signal by bell or whistle on approaching a private
crossing; its duty to do so depends on the circum-
stances of the case. There was, therefore, no negli-
gence *per se* in failing to sound the bell or whistle. The
plaintiff was guilty of negligence in placing himself
in the position of danger. And taking the plaintiff's
own account of his condition it leaves little room to
infer that the sound of the bell or whistle would have

had any effect on him.    This reduces the case to a question of whether the engineer, after seeing the plaintiff in the position of danger, or after he could have seen him if he had been looking, could by the exercise of ordinary care, with the means at hand, have avoided the accident.

"The evidence showed that although this occurred on defendant's right of way and where there was no public crossing, yet it was where the defendant knew that the public was in the habit of using the railroad track for a foot-path and therefore it was the duty of the engineer to be on the lookout for persons so using the track.    If this man had been walking or standing on the track he could have been seen by the engineer in time at least for a danger signal to have been given, but lying as he was on the west side of the track he was not conspicuous as a person walking or standing would have been.

"The engineer was not chargeable with notice that a man was liable to be found lying on the track, and therefore the fact that the engine struck the plaintiff in that position is not in itself sufficient to justify the inference either that the engineer saw him or that he failed to use ordinary care to discover him in time. The plaintiff's testimony, aside from that of the engineer, does not undertake to expressly show his attitude.    He sat down on the west end of a cross-tie and there the stupefaction of intoxication overcame him, and there the plaintiff's evidence leaves the result to inference.    The natural inference is that he fell into a recumbent position."

Technically speaking, the deceased had the legal right to be at the point where he was struck and killed, because it was a portion of a public street, which of itself carries with it the legal right to use all portions of the street consistent with the legal uses to which it was at the time devoted, and for that reason, technically, it was the duty of the servants in charge

of the car to have been careful in looking out for all persons who might have been occupying that portion of the street; but when we come to look at the situation from a practical and common sense standpoint, which is the essence of all law, then the duty to have looked was only commensurate with the amount of travel shown to have existed upon that portion of the street at the time the injury occurred. In this case there is not a scintilla of evidence which tends to prove any one ever used that portion of the embankment for any purposes whatever.

Defendant, therefore, owed him no actual duty to look out for deceased at the place where lying.

III. Counsel for respondent finally insists that the car at the time it collided with deceased was running at a dangerous and reckless rate of speed, and for that reason the trial court erred in refusing her third instruction asked, and in giving appellant's second, which in effect told the jury that there was no evidence in the case tending to show the car was running at a dangerous or reckless rate of speed at the time it struck and killed Mr. Trigg.

The evidence shows that the track upon which the car was running was elevated upon an embankment, some three feet high, and that at the point where the accident occurred there were but few residences, practically in the country, and where there was but little, if any, travel at the hour of night when the accident occurred; and that the car was running from twelve to twenty miles per hour.

In the absence of an ordinance of the city regulating the speed of the cars, we are asked to hold that the foregoing facts are sufficient evidence of the fact that the car was being run at a dangerous and reckless rate of speed at the time it struck deceased, and would warrant a jury in finding for respondent upon that ground. We are unable to grant that request or

to hold that such evidence would be sufficient to sustain a verdict if found in favor of respondent. It is common knowledge that in our great cities ordinances are enacted permitting street cars in the outskirts thereof and in the sparsely settled districts to run from fifteen to twenty miles per hour, and no one to our knowledge has ever questioned their reasonableness. It is also generally known that steam railways are constantly running their trains at as high a rate of speed as the car in question was running at the time this unfortunate accident occurred, and that, too, through districts which are as thickly populated as is South Carrollton, yet we have never seen or heard of a case where it was contended that the speed of a car running fifteen or twenty miles an hour under the circumstances surrounding this one was of itself sufficient evidence of negligence to sustain a verdict. In our judgment no such case exists, and even if it did we would be reluctant in following it. Such speed under different circumstances, such as running through a populous city, or when connected with other facts and circumstances, doubtless would be sufficient evidence of negligence to support a verdict.

But for the sake of the argument, suppose we concede we are in error in the foregoing observations, still we are unable to see in what manner respondent could recover, even though it was negligence in appellant to run the car from fifteen to twenty miles per hour at the place where deceased was struck, for the reason that the law is well settled that where the plaintiff is guilty of negligence which contributes to his injury, before he is entitled to a recovery he must first show that, after the defendant saw his dangerous position, or by the exercise of ordinary care could have discovered it, defendant could by the exercise of reasonable care have avoided injuring him. [Harlan v. Railroad, 64 Mo. l. c. 483; Prewitt v. Eddy, 115 Mo. 283.] As shown in the previous paragraph of this

opinion, there is no evidence contained in this record which tends to show defendant could have prevented the injury after discovering the dangerous position in which the deceased had placed himself.

We must, therefore, hold that under no view of the case was the respondent entitled to a recovery, and that the verdict of the jury was for the right party; and we therefore reverse the judgment of the trial court and remand the cause with directions to reinstate the verdict of the jury, and to enter judgment thereon in favor of the appellant.

All concur except *Lamm, J.*, who dissents as to what is said in the last two lines of paragraph two.