ALVIN WELLS, Respondent; v. JAS. W. LUSK, W. C. NIXON, and W. B. BIDDLE, Receivers of ST. LOUIS and SAN FRANCISCO RAILROAD, Appellants.

**Springfield Court of Appeals, January 30, 1915.**

1. **EVIDENCE: Circumstances and Conditions Under Which Obtained: Railroad Injury.** Defendant's train struck plaintiff who was in a drunken sleep upon the railroad track. Testimony of witnesses who visited the place for the purpose of ascertaining how far a human being could be seen on the track at that point is not admissible as the conditions under which witnesses made the observation were different from those surrounding the engineer who was running the train.

2. **WITNESSES: Party Bound by His Witnesses, When.** Where plaintiff called as a witness defendant's engineer who was in charge of defendant's engine at the time of the plaintiff's injury and the engineer testified as to how far away plaintiff could be distinguished as a human being on defendant's track, the testimony was binding on plaintiff, this being all the testimony on that point.

3. ————: **When Party Concluded by Testimony of His Witness.** A party is not concluded by what any one of his witnesses testifies to when there is other testimony or when there are other circumstances in his behalf to the contrary. But this rule does not apply when the only evidence in the case comes from the witness who discloses that the party offering him as a witness has no cause of action.

5. **APPELLATE PRACTICE: Exclusion of Evidence of Appellee: When Not Material.** Where plaintiff is not the appellant, the question of the exclusion of evidence offered by him is not material to the case.

6. **RAILROADS: Trespassers on Track: Duty to.** There is no duty resting on a railroad to maintain a lookout for trespassers on its tracks. If such persons are actually seen, the carrier must exercise due care to avoid injuring them. But until they are observed no duty arises.

Appeal from Butler County Circuit Court.—*Hon. J. P. Foard,* Judge.

REVERSED.

*W. F. Evans, Moses Whybark* and *A. P. Stewart* for appellants.

(1)   Plaintiff was a trespasser, and defendants' servants in charge of the train owed him no duty until after they actually knew that he was in an exposed and dangerous position.  Zimmerman v. Railroad, 71 Mo. 484; Yarnall v. Railroad, 75 Mo. 575; Maloy v. Railroad, 84 Mo. 270; Rine v. Railroad, 88 Mo. 399-400; Barker v. Railroad, 98 Mo. 54; Hyde v. Railroad, 110 Mo. 272; Reardon v. Railroad, 114 Mo. 405; Loring v. Railroad, 128 Mo. 349; Sinclair v. Railroad, 133 Mo. 233; Zumault v. Railroad, 175 Mo. 318; Carrier v. Railroad, 175 Mo. 470; Moore v. Railroad, 176 Mo. 528; Reyburn v. Railroad, 187 Mo. 565; Frye v. Railroad, 200 Mo. 405; Hall v. Railroad, 219 Mo. 586-7; Degonia v. Railroad, 224 Mo. 594-5; Nivert v. Railroad, 232 Mo. 648; Hamilton v. Railroad, 250 Mo. 722; Railroad v. Hathaway, (Ky.) 89 S. W. 724.   (2)  The engineer was not required to stop the train as soon as he saw the object on the track, but he could wait until he saw and knew that the object was a man.  Joy v. Railroad, 105 N. E. 330; Railroad v. Hathaway, 89 S. W. 724; Railroad v. Kelly, 35 C. C. A. 571; Railroad v. Haynes, 1 S. W. 774 Railroad v. Prewitt, 54 Pac. 1067; Railroad v. Williams, 12 Sou. 957; Murch v. Railroad, 29 N. Y. Sup. 490; Tucker v. Railroad, 24 S. E. 229; Railroad v. Dunnaway, 24 S. E. 698; Palmer v. Railroad, 34 Utah, 466; 16 A. & E. Ann. Cas. 236-240; Reardon v. Railroad, 114 Mo. 405.   (3) The court erred in admitting testimony in relation to experiments as to the distance an object lying on the track at the point where plaintiff was struck could have been recognized as a man.  This testimony was incompetent and had no probative effect.  It did not tend to prove that at the time of the accident the engineer, on a fast moving

train, who, though he looked down the track, did not have a man in mind, and owed no duty to see, actually saw and discerned the character of the object as a man lying prone on the track in time to stop the train and avoid the injury. Maloy v. Railroad, 84 Mo. 276; Early v. Railroad, 72 S. W. 348; Palmer v. Railroad, 16 A. & E. Ann. Cas. 229; Goble v. Kansas City, 148 Mo. 475; Rose v. Bank, 91 Mo. 402; Doud v. Reid, 53 Mo. App. 559; Const. Co. v. Crane Co., 98 Fed. 957.

*Abington & Phillips* for respondent.

(1) The court did not commit error in overruling defendant's demurrer to the evidence and submitting the case to the jury. Murphy v. Railroad, 228 Mo. 56; Isabell v. Railroad, 60 Mo. 475; Werner v. Railroad, 81 Mo. 368; Trigg v. Company, 215 Mo. 521; Klockenbrink v. Railroad, 81 Mo. App. 356. (2) Defendant's engineer saw plaintiff soon enough to have discovered what he was by the exercise of ordinary care, in time to have stopped the train and avoided injuring plaintiff, and his failure so to do, was negligence. Isabell v. Railroad, 60 Mo. 482-483; Werner v. Railroad, 81 Mo. 373-374; Triggs v. Water Co., 215 Mo. 535-537; Klockenbrink v. Railroad, 81 Mo. App. 356. (3) Evidence of the test made by the witnesses as to how far an object lying on the track could be distinguished as a man were proper to go to the jury under the facts of the case at bar. Burton v. Railroad, 162 S. W. 1064; Amsbary v. Railroad, 139 Pac. 46.

ROBERTSON, P. J.—Plaintiff, drunk and asleep upon defendants' railroad track between Poplar Bluff and Sawyer, was struck by the pilot of defendants' freight engine drawing a southbound train of fifteen loaded cars and a caboose, equipped with air brakes. He received injuries, the greatest of which resulted in

188MA5

the amputation of his left leg, and sues to recover damages upon the humanitarian theory. A jury trial was had and plaintiff obtained judgment for $5000 from which defendant has appealed. The injury occurred about five o'clock p. m. of January 15, 1914, a clear day. For two miles north of the point where plaintiff was lying the defendants' track is straight and almost level. The tracks run southwest and northeast. The point where the accident happened was within the fenced portion of defendants right of way. The plaintiff testified that he had with him a scarlet red suitcase twelve inches high, six inches thick and twenty-four inches long. No one testified as to how the accident occurred except the engineer who was a witness in behalf of the plaintiff. He testified that he first saw plaintiff when his train, running eighteen or twenty miles an hour, was within seven or eight hundred feet of him, but that he was unable to distinguish plaintiff as a human being. He testified that crows were in the habit of feeding upon the grain that falls from box cars and that he first thought that the object was a bunch of crows. He testified that the sun shining in his face interfered with his vision. He also testified that he was not able to discover that he was mistaken until within three or four hundred feet of plaintiff when he immediately shut off the steam from his engine, applied the emergency brakes and began and continued to sound the whistle, but that he was unable to arouse plaintiff or to stop the train until it run about thirty feet after striking plaintiff; that he made the shortest stop possible. He says that the plaintiff was lying with his feet on the north or west rail and his head toward the south or east rail and that his head was buried in the suitcase. The plaintiff introduced several witnesses who went to the scene of the accident almost two months thereafter and made tests as to the distance in which they could distinguish a person, lying on the track where plaintiff was, as a human being

and they placed the distance at from seven hundred to twelve hundred feet.

At the close of the testimony the court at the request of the plaintiff gave an instruction, 2, as follows:

"The court instructs the jury that although you may find and believe from the evidence adduced in the trial of this cause, that when defendants' engineer in charge of its train of cars first saw plaintiff, in an intoxicated condition lying upon defendants' track, that said engineer did not recognize plaintiff as a human being, still, if you further find and believe from the evidence that said engineer could, by the exercise of ordinary care and caution have discovered that the object he saw on the track was a human being in time to have avoided running said train against and over plaintiff, and that said engineer under such circumstances failed and neglected to avoid running said train over plaintiff and injuring him as described in evidence, then and in that event you will find your verdict for the plaintiff."

At the close of all of the testimony the defendants requested an instruction directing a verdict in their behalf.

Plaintiff's instruction above quoted is ambiguous. That part of the instruction following the word "still" cannot be taken as referring to or qualifying the first part of it, because there is no contention that the engineer did not make the best stop possible after the time when he testified he distinguished plaintiff as a man. The said latter part means, and no doubt was so intended, to tell the jury that he might conclude from the testimony that the engineer could have, by the exercise of ordinary care and caution, discovered that plaintiff was a human being at a time earlier than he-testified that he did make such discovery, as that would have been the only way that he could have avoided the accident. It is, therefore, necessary to ascertain if there is any testimony on which to base the

hypothesis that he could, by the exercise of ordinary care and caution, have made this discovery sooner than he did after seeing an object on the track. We hold there is no such testimony authorizing it. In this case there is no evidence that the engineer could have discovered the fact that plaintiff was a human being sooner than he testified he did so distinguish him. The testimony of the witnesses who made the so-called tests after the accident is of no aid in this case. They went to look at an object they knew to be a man; they were not on a locomotive engine running eighteen or twenty miles an hour, and experience teaches us that the ease with which we conclude that an object is a prostrate human being, when we already know it is such, can form no test as to what we can distinguish when we have no such previous knowledge. The jury could judge of the engineer's ability in this respect as well without this testimony as with it. The tests were made under different conditions entirely than were the observations of the engineer taken. The testimony was objected to and should not have been admitted. This case, upon this point, presents an entirely different condition than that disclosed in Burton v. Chicago & Alton Railway Co., decided by the Kansas City Court of Appeals, 162 S. W. 1064, cited by respondent.

The plaintiff in this case is bound and concluded by the testimony of the engineer, because this is all the testimony in this case on this point, and this shows that the engineer stopped his train as soon as he could after discovering the object was a man and that he discovered this latter fact as soon as possible. This testimony was called for and obtained as the conclusion of the engineer without having him merely detail the exact position of plaintiff on the track, the prominence of the suitcase or to describe minutely what, if any, appearances were presented that might have enabled him more readily than he did to distinguish plaintiff, but as plaintiff left it to the jury on the engineer's opinion and con-

clusion, the said tests being worthless, there was nothing before the jury except the uncontradicted testimony of the engineer that he discovered plaintiff was a man as soon as he could and that he thereafter did all in his power to save him. Under these facts said instruction for the plaintiff should not have been given, but on the contrary the defendants' instruction directing a verdict should have been given.

We are not unmindful of the rule announced in the Burton case, supra, that a party is not concluded by what any one of his witnesses testify to when there is other testimony or circumstances in his behalf to the contrary, yet that rule does not apply when the only evidence in the case comes from the witness who discloses that the party offering him has no cause of action.

The plaintiff asked a question of one witness about the habitual user of defendants' roadbed as a footpath, but on an objection thereto being sustained plaintiff proceeded no further along that line, but as he has not appealed that point is out of the case. We, therefore, have before us a situation wherein the plaintiff was a bare trespasser and not a case where the engineer must be held to anticipate that human beings would be on the track; important facts to keep in mind when reading decisions bearing on cases of this character. Many decisions are cited in the briefs in this case on the duty of defendants, but we shall refer to only a few of them. The plaintiff cites Murphy v. Wabash Railroad Co., 228 Mo. 56, 128 S. W. 481, which comments upon many of the other cases cited by him. The defendants cite, with many others, Hall v. Missouri Pacific Railway Co., 219 Mo. 553, 118 S. W. 56, and Hamilton v. Kansas City Southern Railway Co., 250 Mo. 714, 157 S. W. 622.

The defendants contend that the engineer's duty began only when he actually discovered the plaintiff *as a human being* upon the track; that no duty was im-

posed to anticipate or discover him at this place in the country where there was no user shown, no crossings existed and where the right of way was fenced. In the Hamilton case, supra, at page .722, it is stated that "The law does not make it the duty of a railroad to maintain a lookout for trespassers on its track. If such persons are actually seen, the carrier must exercise due care to avoid injuring them; but until they are observed, no duty arises." The fact, as disclosed at the bottom of page 718, that "many persons used the track" where the accident occurred is, at the bottom of page 721, considered and the party held to be a trespasser, so the above quoted ruling was necessary to a decision in that case and is binding on us. The Hall case, supra, commencing at the bottom of page 586 lays down a similar rule and makes observations that distinguishes the cases relied on by respondent from those relied on by appellants. We might continue to discuss cases, but the rule seems to be made so clear by the two cases we have specifically called attention to that a careful reading of them and the opinions relied on by plaintiff, in the light of the facts involved in them, that it is useless to take time and space to elaborate more.

Whether the engineer should have ascertained quicker that plaintiff was a man, as we have seen, is not involved in this case, because the testimony conclusively shows he did his best. If the engineer, as soon as he saw an object on the track, did discover, or by the exercise of ordinary care could have discovered, that plaintiff was a human being or property of any kind then the discussion which is found in Trigg v. Water, Light & Transit Co., 215 Mo. 251, 114 S. W. 972, at pages 538 and 539, would necessarily be up for consideration, but, as before stated, the plaintiff offered no facts or proof of circumstances that tended to prove that the engineer did not ascertain as soon as

possible, after seeing what he thought was a bunch of crows feeding on the track, the identity of the plaintiff

The judgment is reversed.  *Farrington* and *Sturgis, JJ.,* concur.

**Springfield Court of Appeals, January 30, 1915.**