CALCATERRA et al., Respondents, v. IOVALDI et al., Appellants.

St. Louis Court of Appeals, March 5, 1907.

1. NEGLIGENCE: Evidence: Collateral Acts. In an action for damages caused by the defendants' negligence, whether evidence of other negligent acts besides the one charged would be received in evidence depends upon the cogency of the proof it affords regarding the main issue, whether or not the court deems its bearing on the main issue would be so valuable as proof of the main fact that objections to it as collateral evidence may be disregarded.

2. ———: ———: ———. In an action for damages caused by the death of the plaintiffs' child killed by the falling of a barrel from the defendants' second story window where one of the defenses was that the falling was purely accidental, evidence that other barrels had fallen or had been thrown from the window at other times was inadmissible.

3. ———: Parent and Child: Measure of Damages for Death of Child. In an action for damages brought by a parent for the death of a child, an instruction on the measure of damages which authorized the jury if they found for plaintiff to give such damages not exceeding $5,000, as they "deemed fair and just with reference to the necessary injury resulting to plaintiffs from the death of their daughter and having regard also to the mitigating or aggravating circumstances pertaining to the neglect complained of," was erroneous because it was likely to be interpreted by the jury as allowing damages to be awarded for the sorrow caused by the death of the child or for benefits that might have accrued to them during the whole life of the child.

4. ———: ———: ———. The measure of damages recoverable by a parent for the death of a child is limited to the pecuniary loss resulting from the negligent death, such as will compensate the parent for the value of the child's life during minority and the expense of caring for it after the fatal injury and burying it.

5. ———: ———: ———: Exemplary Damages. In an action by parents for damages caused by the death of their child which was killed by a barrel being thrown or falling upon it from the second story window of the defendant's building, where there was evidence tending to show wantonness in throwing the barrel from the window or recklessness in handling it

,Calcaterra v. Iovaldi.

in such way that it fell out, it was a case in which the jury under proper instruction should have been authorized to give exemplary damages; but exemplary damages could not be allowed if the jury should find the casualty was due to nothing worse than the lack of ordinary care.

Appeal from St Louis City Circuit Court.—*Hon. Robt. M. Foster,* Judge.

REVERSED AND REMANDED.

*Kehr & Tittmann* for appellants.

(1) Where specific acts of negligence are alleged, evidence of other acts is inadmissible. Atchison v. Railroad, 80 Mo. 213; McCarty v. Hotel Co., 144 Mo. 397; Fuchs v. St. Louis, 167 Mo. 640; Garven v. Railroad, 100 Mo. App. 617; Spiro v. Transit Co., 102 Mo. App. 250. (2) Negligence and wantonness or willfulness cannot coexist. Boyd v. Transit Co., 108 Mo. App. 303; Maggioli v. Transit Co., 108 Mo. App. 416; Ruebsam v. Transit Co., 108 Mo. App. 437. (3) The "necessary injury" spoken of in the statute means the necessary pecuniary loss of the parents resulting from the death of the child, and the court's instruction must point out the elements of damage which the jury may take into consideration. Rains v. Railway Co., 71 Mo. 164; Parsons v. Railway Co., 94 Mo. 287; McGowan v. Ore & Steel Co., 109 Mo. 519; Leahy v. Davis, 121 Mo. 227; Hickman v. Railroad, 22 Mo. App. 344; Stumbo v. Zinc Co., 100 Mo. App. 639; Coleman v. Land & L. Co. 105 Mo. App. 272; Brunke v. Telephone Co., 112 Mo. App. 626.

*Alexander Rahm* and *Willis H. Clark* for respondents.

(1) Evidence of other acts is admissible where such acts are in a sense collateral to that which is charged in the pleading, tending to draw an inference upon the particular act or omission, that the same was

not a mere accident, and also the habits of certain of the employees. Franklin v. Railroad, 97 Mo. App. 480; Rose v. St. Louis, 152 Mo. 602; Golden v. Railroad, 84 Mo. App. 59; Golden v. Clinton, 54 Mo. App. 115; Brunke v. Telephone Co., 90 S. W. 753; 11 Am. and Eng. Ency. Law (2 Ed.), p. 512. (2) . It is proper to include words "having due regard to the mitigating or aggravating circumstances" in an instruction where the evidence warrants. McCarty v. Transit Co., 91 S. W. 132; Rains v. Railroad, 71 Mo. 164; Nagel v. Railroad, 75 Mo. 653; Nichols v. Winfrey, 79 Mo. 544; Parsons v. Railroad, 94 Mo. 286. (3) Where there were aggravating circumstances the jury should not be restricted to a mere question of dollars and cents. Morgan v. Durfee, 69 Mo. 469. (4) It was the duty of counsel for defendants to ask instructions limiting the elements of damages, and court did not err in the giving of instructions for plaintiff. Geisman v. Electric Co., 173 Mo. 679; Barth v. Railroad, 142 Mo. 556; McGowan v. Ore & Steel Co., 109 Mo. 541.

GOODE, J.—This appeal was taken from a judgment for four thousand dollars against the appellants. Respondents were the parents of Rosa Calcaterra, a child seven years old at the time of her death. She was killed by the falling of a beer keg or barrel from a window in the second story of a building used as a dramshop by appellants. This building was at the southwest corner of Cooper street and Shaw avenue, two traveled thoroughfares in the city of St. Louis. While the deceased was walking along the west side of Cooper street on May 23, 1904, a heavy barrel fell out of the window, striking her on the head and crushing her skull so that she died. This action was brought on sections 2864 and 2865 of the Revised Statutes of 1899, to recover $5,000 damages for the death of the child. Suffice to say as to the evidence, that it has a tendency to prove the accident was caused by the gross negligence of an employee of ap-

pellants. The petition contains no direct allegation of wantonness or recklessness, but avers that appellants, by an agent, servant or employee, carelessly and negligently and without regard to the safety of the deceased or other persons passing, caused a beer barrel to fall out of a window of the premises occupied by appellants, striking the deceased on the head and inflicting such injuries that she died from them.

The court received testimony over appellant's objection, tending to show that other barrels had been seen to fall from the upper window of the saloon within a week previous to the accident. One witness testified that he saw six or seven barrels drop into the street from the window at one time. This witness' testimony is not positive that the barrels were thrown out of the window, but the belief that they were can be derived from what he said. Another witness testified to seeing a barrel thrown out of the window previous to the accident in question, but at a date which was left indefinite. The reception of this testimony is assigned for error and whether it was competent, considering that one of the defenses submitted was, that the falling of the barrel was purely accidental, has proved to be a question of very great difficulty, both on principle and authority. After much research among the cases and text-writers, we have concluded the weight of authority and the decisions in this State are against its competency. In an action like this exemplary damages may be given if there are circumstances of aggravation, and such incidents as the foregoing leave the impression that the barrel which killed the child was recklessly thrown into the street. Still, it may not have been. In certain classes of negligence cases, evidence of other negligent acts besides the one charged has been received, as tending to prove negligence in the act charged. It is said the collateral act may be proved if the inference may be drawn from it that the act charged was or was not negligent;

but a study of the cases reveals, we think that the admis-
sibility of proof of the collateral act depends finally on
the cogency of the proof it affords regarding the main is-
sue—on whether it is so closely related to the main issue
that its value as evidence is high enough to justify dis-
regarding the objections to the reception of proof of
collateral acts.    In cases for damages caused by the
fright of horses at objects on a highway, testimony that
other horses had taken fright at the same objects has
been held competent on the issue of whether this hap-
pened in the particular case. [Golden v. Railroad, 84 Mo.
App. 59, 65; Crocker v. McGregor, 76 Maine 282; Dar-
ling v. Westmorland, 52 N. H. 401.]   This is on the the-
ory that the disposition of horses to take fright is suffi-
ciently uniform to raise a probability that what will
frighten one will another.   Yet likely the application of
this rule would be qualified in some measure by a con-
sideration of the accustomed environment of the horses
drawn into comparison; because many objects in a city
which would not alarm horses familiar with them,
frighten horses from the country.   In Rose v. St. Louis,
152 Mo. 602, 54 S. W. 440, an action for damages caused
by a stone falling from a cornice, the charge being that
the cornice was loosely constructed of rotten stone, it
was held proper to show other stones had fallen from it,
for the reason that the loose state of the other stones
might have caused the one which inflicted the injury to
fall; and also as tending to show notice to the city of the
unsafe condition of the cornice.   In Evans v. Gas Co.,
148 N. Y. 112, an action for injury to the plaintiff's
trees, by escaping gas, it was held competent to show the
condition of other trees in the vicinity.   In those in-
stances the collateral facts obviously had a very strong
probative bearing on the issue to be tried.   Evidence
that a defect in a sidewalk, street, machinery or appli-
ance which is alleged to have caused an injury in suit,
had caused injury to other persons before, is held by

some courts to be competent, while others hold the contrary; as will be seen by comparing the following authorities. [Dist. of Columbia v. Armes, 107 U. S. 519; McCarragher v. Rogers, 120 N. Y. 526; Morse v. Railroad, 30 Minn. 465; Harrahan v. Railroad, 6 N. Y. Supp. 395; Larkan v. O'Neill, 48 Hun 591; Pacheco v. Mfg. Co., 113 Calif. 541; Howland v. Railroad, 115 Calif. 487; Rumpel v. Railroad, 35 Pac. 700; Pittsburg, etc., Railroad v. Ruby, 38 Ind. 294; Dalton v. Railroad, 114 Ia. 257; Robinson v. Railroad, 7 Gray 92; Maguire v. Railroad, 115 Mass. 239; Southern Kas. R. R. v. Robbins, 43 Kas. 145; Shearman & Redfield, Negligence (5 Ed.), sec. 60b and note 2; 1 Wigmore, Evidence, sec. 199 and note 1.] In this State the admissibility of previous accidents at a defective place in a sidewalk was considered in Goebel v. Kansas City, 148 Mo. 470, and such evidence ruled to be inadmissible; in effect overruling Golden v. Clinton, 54 Mo. App. 100. In the opinion in the Goebel case the Supreme Court noticed the conflict in the decisions and said the weight of authority was that such evidence should be excluded as tending to divert the minds of the jury from the question to be decided to collateral issues, create a prejudice in their minds against the defendant and surprise him with an issue the pleadings did not present. Those, in substance, are the grounds on which text-writers state that such testimony is held inadmissible in most jurisdictions. [1 Greenleaf, Evidence (16 Ed.), sec. 14a.] The competency of a collateral fact in a given case turns, as we have said, on whether or not the court deems its bearing on the main issue to be so intimate and valuable as proof of the main fact that the objections to collateral evidence may be disregarded. Obviously there will often be a diversity of views on such a matter; hence the conflict in the opinions dealing with the subject. Likely proof of a negligent custom is admissible as tending to show negligence in an alleged instance of the custom. [1 Wig-

more, Evidence, sec. 97; Brunke v. Telephone Co., 115 Mo. App. 36, 90 S. W. 753.] In the present case the petition does not count on a custom or habit of appellants to throw barrels into the street; nor, indeed, can it be said the evidence received tended to establish such a custom. It simply showed, at most, that this was done on two occasions prior to the fatal accident; whether by an employee of appellants or a stranger, does not appear. However tortious those acts may have been, their probative force in showing either a lack of ordinary care, willfulness or recklessness in the accident which caused the death of the child, was so indirect and uncertain as to be outweighed by the prejudice likely to be excited by bringing them to the attention of the jury. Moreover, the evidence in question had a tendency to raise collateral issues as to whether the incidents related actually occurred or not, and, if so, under what circumstances, and to spring a surprise on appellants. We hold the evidence should have been rejected, but with some doubt of the correctness of the ruling.

Whether or not barrels had fallen or been thrown out before, there was ample evidence to prove negligence in the present case and some to prove recklessness; for one witness testified that his attention was attracted by hearing an exclamation and, on turning around, he saw a man pull his hand inside the window when the barrel was half way out of it. This testimony would support an inference that the barrel was intentionally dropped from the window. Moreover, the policeman who picked the child up, testified that she was lying five or six feet east of the sidewalk, which was three feet wide. As the window was above the sidewalk, unless an impulse was imparted to the barrel, it hardly would have dropped far enough from a vertical line to strike the child if she was nine feet from the wall of the buliding.

The jury were instructed that if they found for re-

spondents they might give such damages, not exceeding five thousand dollars, as they deemed fair and just with reference to the necessary injury resulting to plaintiffs from the death of their daughter, and having regard also to the mitigating or aggravating circumstances attending the neglect complained of. The instruction followed, in substance, the language of the statutes. Exactly similar charges on the measure of damages have been condemned as erroneous by the Supreme Court in identical cases, on the ground that they were likely to be interpreted by the jury as allowing damages to be awarded parents for the sorrow caused by the death of a child or for benefits that might have accrued to them during the whole of the child's life; whereas none but pecuniary damages are allowed; such as will compensate the parents for the value of the child's life during minority and the expense of caring for it after the fatal injury and burying it. From the amount of these items is to be deducted the reasonable cost, if shown, of keeping the child. In other words, the recovery is confined to the pecuniary loss resulting from the negligent death, and the instructions to the jury should direct attention to the elements of loss which may be included in the assessment of damages. [Parsons v. Railroad, 94 Mo. 286, 6 S. W. 464; McGowan v. Steel Co., 109 Mo. 518, 19 S. W. 199; Lehy v. Davis, 121 Mo. 227, 25 S. W. 941; Hickman v. Railroad, 22 Mo. App. 344.]

There was testimony in this case which would warrant the giving of exemplary damages, either on the score of wantonness in throwing the barrel from the window, or gross negligence, amounting to recklessness, in handling it in such a way by an open window that it fell out. This being true, the jury might have been advised regarding what facts, if proved, might be taken into consideration as aggravating the damages, instead of leaving the matter to conjecture or caprice. That is to say, the jury should have been told that if they found the barrel was

thrown from the window without looking to see if any one was in danger, or, as some testimony indicates, was thrown on top of a box by the window in reckless disregard of its liability to roll out and fall on some one below, and in consequence of such handling it fell, exemplary damages might be given. [Parsons v. Railroad, supra; Nichols v. Winfrey, 79 Mo. 544, 553; Rains v. Railroad, 71 Mo. 164; Noyle v. Railroad, 75 Mo. 655; Smith v. Railroad, 92 Mo. 359, 373, 4 S. W. 129.] If there should be evidence tending to prove the casualty was due to nothing worse than a lack of ordinary care, as perhaps there was in the testimony of the bar tender, the jury should be instructed that if this is found to be true, exemplary damages should not be allowed. [Parsons v. Railroad, 94 Mo. 1. c. 299; Leahy v. Davis, 121 Mo. 1. c. 232; 1 Joyce, Damages, sec. 133, and cases cited in note.] Respondents are entitled, of course, to recover their pecuniary loss, if appellant's servant was delinquent no further than in failing to exercise reasonable care.

It is insisted that in the case of Sharp v. National Biscuit Company, 179 Mo. 553, 560, 78 S. W. 787, the Supreme Court altered the rule theretofore prevailing in this State, in regard to the measure of damages in an action for the death of a child, and held that damages for the loss of the comfort, society and love of the child might be recovered. It is true a remark to that effect is made in the opinion, but the question did not arise for determination. The same decision was pressed on the Kansas City Court of Appeals in Marshall v. Consolidated Jack Mines Co., 119 Mo. App. 270, 95 S. W. 972, as having changed the measure of damages. Said court pointed out that the remark of the Supreme Court in regard to recovery for the loss of the child's companionship was obiter, and called attention to the long line of consistent decisions in this State holding that the damages to be recovered are for the pecuniary loss only. The opinion in the Sharp case did not purport to over-

rule the numerous decisions of the Supreme Court against the recovery for loss of companionship, and we think the remark which looks like damages for such loss may be assessed ought to be treated as an inadvertent utterance on a point not involved in the decision. The companionship of a child seems not to be treated as possessing pecuniary value, as the nurture and oversight of a parent is. [Stoher v. Railroad, 91 Mo. 518, 4 S. W. 389.]

The judgment is reversed and the cause remanded. All concur.