# MARCH, 1936.

MYRTLE WILLIAMS AND OSCAR WILLIAMS, RESPONDENT, v. EXCAVATING AND FOUNDATION COMPANY, a CORPORATION, APPELLANT.—93 S. W. (2d) 123.

St. Louis Court of Appeals. Opinion filed April 7, 1936.

Motion for rehearing overruled April 28, 1936.

*Moser, Marsalek & Dearing* for appellant.

*Everett Hullverson* and *Robert L. Aronson* for respondents.

BENNICK, C.—This is an action by plaintiffs, Myrtle Williams and Oscar Williams, for damages for the alleged wrongful death of their minor son, Jack Williams, who came to his death on March 3, 1933, when he was struck and run over by a truck of defendant, Excavating & Foundation Company. Tried to a jury, a verdict was returned in favor of plaintiffs, and against defendant, in the sum of $5,000; and from the judgment rendered in conformity with the verdict, defendant's appeal to this court has followed in the usual course.

The record discloses that at the time of the accident plaintiffs were living at 1029 South Thirteenth Street, in the City of St. Louis, their home being located near the middle of the block on the west side of the street, which runs north and south. The street is a narrow one, not more than twenty-five feet in width, and appears from the photographs in the case to be paved with asphalt or some other such material so as to adapt it to automobile traffic.

It seems that shortly before 10:00 o'clock on the morning of March 3, 1933, Mrs. Williams had gone to visit a neighbor who lived directly across and on the east side of the street at No. 1030, being accompanied by her son, Jack, a sturdy little fellow ten years of age, but unfortunately afflicted with epilepsy of a type which is claimed to have rendered him mentally defective, and which had prevented him from ever having gone to school. In fact he had never even learned to talk, though it would appear that by the time of his death he had reached a point where he had begun to put a few words together so that he could make himself understood, at least by the members of his immediate family.

The testimony indicates that after Jack had remained with his mother for a few minutes in the neighbor's home, he slipped out of the house, and evidently started back across the street to his own

home, perhaps to assist an older brother with the dishes as it seems he was accustomed to do.

Save for the driver of the truck who was not called to testify in the case, the only eyewitness to the accident was one Bert Hurley, a decorator by trade, who lived in the neighborhood and happened to be driving southwardly on South Thirteenth Street at the time.

According to Hurley's testimony there were two of the concrete mixer trucks going northwardly on the street on that occasion, the second or rear truck having been the one that struck and ran over the deceased. Though there was nothing between Hurley and the approaching truck to have obstructed his view of it, the fact was that he had taken no notice of its presence on the street at all until momentarily before the collision when he observed it headed across the street in his direction at such an angle that its right front wheel and left rear wheel were then both upon the imaginary center line of the street. His failure to have seen the truck sooner is perhaps to be explained by the fact that he had been forced to pull over against the west curb as the first of defendant's trucks passed him, and that as he pulled out from the curb he was intent on making a turn into an alley when his attention was directed to the unusual movement of the second truck.

Now at the very moment that Hurley first observed the truck being driven in the course as indicated, he also noticed the deceased for the first time, his testimony being that the boy was then standing still in the middle of the street, facing slightly to the southwest, at a point about nine feet in front of the oncoming truck, which was being operated at a speed of ten or twelve miles an hour. The speed of the truck was not reduced at any time before the child was struck, nor was its immediate course changed until the very moment of the collision, when it seemed to Hurley that it was swerved a little further to the left, but not enough to prevent the right front wheel from striking the deceased and knocking him to the street where both the front and rear right wheels passed over his body.

It further appears that the truck, which was approximately twenty feet in length, was brought to a stop with its rear end as much as twelve feet beyond the point where the boy was lying, which means that after Hurley first saw the truck still nine feet away from the boy it ran a total distance of forty-one feet before being brought to a stop, and this notwithstanding the fact that as shown by the evidence it could have been stopped at its speed of ten to twelve miles an hour in a space of from eight to ten feet.

The only other evidence regarding the facts of the accident consisted of a written statement given by the driver of the truck to the police department immediately after the accident, which was introduced in evidence by plaintiffs themselves at the very conclusion

of their case in chief.  Having been introduced by plaintiffs with no objection from defendant, there is of course no question before us of the competency of the statement as evidence, and it is therefore to be taken and considered by us for whatever legitimate purposes it may have served in the case.

This statement, which purported to give the driver's own version of the occurrence, was to the effect that he was driving his truck northwardly as near to the east curb as he could; that when he was in front of 1024 South Thirteenth  Street he saw the boy dart out from the east sidewalk; and that he applied the emergency and foot brakes, and swerved immediately to avoid hitting him, but was unable to prevent the right front wheel from striking him.

Still other material evidence was that the driver did not sound his horn at any time before the accident, and that there were no automobiles parked along the east curb that particular morning so as to have prevented a northbound vehicle from being driven safely to the right-hand side of the street.

The case was submitted to the jury by plaintiffs upon two theories of negligence, the first, that the driver of the truck had failed to sound a timely warning of his approach; and the second, that he had been guilty of a violation of an ordinance of the City of St. Louis requiring the operator of a slow-moving vehicle to drive the same as close to the right-hand side of the street as possible except when overtaking and passing another vehicle.

Though defendant makes no point about the sufficiency of the evidence to have withstood the challenge by demurrer at the close of the entire case, it does question its sufficiency to have warranted the giving of plaintiff's instruction No. 2, hypothesizing a verdict for plaintiffs upon a finding that defendant's driver had been guilty of a violation of the ordinance in question proximately resulting in the death of plaintiff's minor child.  It argues that not only was there no proof of a causal connection between any violation of the ordinance and the death of the deceased, but indeed that there was no showing that the ordinance had in fact been violated; and it insists that for want of substantial evidence to have raised an issue of fact regarding defendant's actionable negligence under the ordinance, it was reversible error for the court to have submitted such issue to the jury by plaintiffs' instruction No. 2.

We think that under the most favorable view of the case from plaintiffs' standpoint there was no error in the giving of this instruction. Of course it is an undisputed fact that at the moment of the collision the truck was not being driven as close to the right-hand side of the street as possible, but instead it was out in the very middle of the street, with its right front wheel half the width of the street or twelve and one-half feet from the curb.  Furthermore, if the truck had been

kept upon its proper side of the street, and with the deceased at a standstill in the middle of the street, there would have been more than enough room for the truck to have passed between him and the curb with absolute safety to him. Upon such facts, and under ordinary circumstances, there would unquestionably be a clear case presented, not only of a violation of the ordinance, but also of a causal connection between such violation and the resulting injury to the deceased. [Gillis v. Singer (Mo. App.), 86 S. W. (2d) 352; Willis v. Applebaum (Mo. App.), 26 S. W. (2d) 823.]

The complication here is from the fact, as disclosed by the driver's written statement, that prior to the moment he saw the boy dart off of the sidewalk, prompting him to swerve to the left in an attempt to avoid hitting him, he had actually been operating his truck as near the east curb of the street as he could. It must be borne in mind that this statement was introduced in evidence by plaintiffs themselves as a part of their own case, so that to whatever extent it constituted the only evidence in the case upon a point in issue, it is to be taken as conclusive against plaintiffs, even though adverse to their claim, and they will not now be heard to urge that the unfavorable effect of such statement should be disregarded. [Polkowski v. St. Louis Public Service Co. (Mo. App.), 68 S. W. (2d) 884; Wells v. Lusk, 188 Mo. App. 63, 173 S. W. 750.] However it is also true that to whatever extent there were other facts and circumstances in evidence from which the jury could have drawn an inference contrary to the driver's version of the facts, then to that extent plaintiffs are not bound by the driver's statement, but are left free to claim the full benefit of all such contrary inferences. [Hoffman v. Peerless White Lime Co., 317 Mo. 86, 296 S. W. 764; Sbiglio v. St. Joseph Lead Co. (Mo. App.), 243 S. W. 204.]

With this distinction in mind it is at least to be taken as conclusive that prior to the time the driver of the truck saw the deceased leave the sidewalk he had been operating his truck as near the right-hand curb as he could, and that the reason he had left the curb and pulled out to the center of the street was to avoid hitting the deceased. Thus the purport of the driver's statement was to show that he had suddenly been confronted with an emergency to meet which he had swerved his truck over sharply to the left; and defendant's counsel argue that such a state of facts could not have warranted the submission to the jury of the question of the driver's violation of the ordinance as a proximate cause of the accident and the resulting death of the deceased.

Now it is indeed quite true that where one is confronted with a sudden emergency he is not to be held to the same degree of accuracy of judgment as would be the case if he had more time for deliberation, but he is nevertheless not to be excused from the exercise of any

and all care, but in the matter of determining the best course to pursue, the propriety of the course he chooses is to be measured in the light of the facts and circumstances attending the particular emergency. [Crupe v. Spicuzza (Mo. App.), 86 S. W. (2d) 347.]

In this instance, viewing the case in the aspect most favorable to plaintiffs' right to recover, it would seem that the driver's statement regarding the suddenness of the emergency is to be tempered by the other evidence in the case to the effect that after the deceased had left the sidewalk he had had time to cross to the middle of the street and to come to a stand-still at that point, all before the truck, at its speed of ten or twelve miles an hour, had come closer than nine feet to the ultimate point of the collision. So obviously the deceased must not have left the sidewalk from a point directly in front of the oncoming truck and under such circumstances that the driver of the truck was left with absolutely no time for deliberation as to the best course for him to pursue, by all of which we mean to imply that there was at least a fair question of fact in the case as to whether the driver was negligent in swerving over to the middle of the street rather than in taking such other step or steps as due care might have called for under the peculiar circumstances of the case. The question of defendant's actionable negligence for violation of the ordinance was therefore one for the jury to determine, and its submission by plaintiffs' instruction No. 2 was not improper as against the contention of want of substantial evidence to have supported the instruction.

For its next point defendant assigns error to the giving of plaintiffs' instruction No. 5, which informed the jury that if they found for plaintiffs under the other instructions in the case, then in determining the measure of plaintiffs' recovery within the statutory limits of $10,000, they might take into consideration the aggravating circumstances, if any, attending the negligence of defendant. The burden of defendant's complaint about the instruction is that there was no evidence of aggravating circumstances in the case, and therefore no support in the evidence for the giving of such instruction.

The statute (Sec. 3264, R. S. 1929; Mo. St. Ann., sec. 3264, p. 3377) provides that in every action such as this for wrongful death the jury may give such damages, not exceeding $10,000, as they may deem fair and just with reference to the necessary injury resulting to the plaintiffs from such death, and also having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect, or default. Thus the damages to be allowed, though primarily compensatory, are nevertheless subject to be either diminished or increased as the mitigating or aggravating circumstances of the case may require (Ponticello v. Liliensiek (Mo. App.), 83 S. W. (2d) 150), but obviously if there is no evidence of any such circumstances,

then the jury should be limited in their consideration of the case to the issue of pure compensatory damages.

Now to whatever extent the damages are increased by reason of aggravating circumstances attending the death of the deceased, such increase is punitive in its nature; and therefore to constitute evidence of a character to warrant the submission of the issue of aggravating circumstances there must be a showing of willful misconduct, wantonness, recklessness, or a want of care indicative of indifference to consequences. In other words, if the evidence shows only that the accident was the result of a want of due care on the part of the defendant or his agent, then the case is merely one of negligence and nothing more; but if it shows that the negligence of the defendant or his agent was attended and accompanied by such circumstances as to evince a reckless disregard of the rights of others, then the jury have the right under the statute to take such aggravating circumstances into consideration in determining the amount to be allowed the plaintiff or plaintiffs and an instruction so informing them is consequently proper. [Stoher v. St. Louis, I. M. & S. Ry. Co., 91 Mo. 509, 519, 4 S. W. 389; Boyd v. Missouri Pac. R. Co., 236 Mo. 54, 139 S. W. 561; Barth v. Kansas City E. Ry. Co., 142 Mo. 535, 558, 44 S. W. 778; Calcaterra v. Iovaldi, 123 Mo. App. 347, 100 S. W. 675.

We cannot escape the conclusion that in this case the issue of aggravating circumstances was one for the jury to determine. With a clear view in the street ahead of him, as the evidence shows that there was, defendant's driver must have seen the deceased upon the sidewalk before he ever stepped off of the sidewalk out into the street. The facts indicate that it had been the intention of the deceased in leaving the neighbor's home to return at once to his own home, and though he may not have taken the most direct route across the street, it would not be too much to assume that his actions in leaving the house and coming out upon the sidewalk should at least have put the driver upon notice of the possibility that so small a child might run out into the street. Yet the driver sounded no warning of his approach; and when the child did step out into the street at what must have been quite an appreciable distance ahead of the oncoming truck as we have already pointed out, the driver, instead of keeping along the curb or safely upon the right side of the street so that the child might have passed ahead of his truck in perfect safety, pulled out to the center of the street as though he was perhaps more interested in keeping up with the companion truck ahead of him than he was in conserving the safety of the child upon the street. In fact, although he might have stopped his truck within a space of from eight to ten feet, he did not do so, but permitted it to strike and run over the child, and then run for an additional distance of thirty-two feet before he brought it to a stop.

For our part we are not to be understood as saying that the driver either did or did not act in conscious disregard of the rights of the deceased upon the street. What we do say is that there was evidence from which the jury as the triers of the facts might have so found, and this being true, it necessarily follows that there was no impropriety in the submission of the issue of aggravating circumstances to the jury.

But defendant says that the instruction was in any event erroneous in that it failed to point out to the jury the precise circumstances claimed to be aggravating. It did tell the jury that for the circumstances to be aggravating they must have been such as to have evinced a reckless disregard of the rights of others, and beyond this or language of a similar import we do not believe the instruction might properly have gone. Had it pointed out the specific facts or inferences from which the jury might have concluded that the driver of the truck had displayed a reckless disregard of the rights of the deceased, it would have been subject to the charge of having unduly commented upon detached portions of the evidence. Certain old cases may have used language which on its face lends countenance to defendant's present contention, but as the law having to do with the form of instructions is now written the detailed facts of the case should not have been submitted in the instruction as though the court itself believed those facts to have existed and to have sufficed to warrant an assessment of something by way of a penalty against defendant.

It is also claimed by defendant that plaintiffs' instruction No. 5 was in conflict with their own instruction No. 4, and with defendant's instruction No. 10. Plaintiffs' instruction No. 4 was limited purely to the issue of compensatory damages, while plaintiffs' instruction No. 5, which immediately followed it, simply informed the jury that they were entitled to consider the evidence of aggravating circumstances, if they found that there had been aggravating circumstances in the case. Better practice would no doubt have dictated that but a single instruction should have been given for plaintiffs upon the question of the measure of damages, including within its terms all the elements which plaintiffs desired to have the jury consider, but when the two instructions for plaintiffs are read together, the same result is reached. So far as the conflict between plaintiffs' instruction No. 5 and defendant's instruction No. 10 is concerned, if there was evidence to have warranted the submission of the question of aggravating circumstances in plaintiffs' instruction, then it is of no consequence to defendant that the same may have been in conflict with defendant's instruction No. 10, which had failed to include or refer to that element of the case. A correct instruction for one party will never be held erroneous because it is in conflict with an incorrect instruction for his adversary.

The next point has to do with the propriety of certain argument of plaintiffs' counsel, wherein he said: ''Now, they talk about their defense. The driver is not here. You haven't seen an officer of the company, not a single person who ought to be interested. Don't that lead you to believe it is incompetence and carelessness and callousness?''

Apparently conceding the propriety of the comment regarding defendant's failure to have produced its driver, counsel now assail only that portion of the argument which called attention to the absence from the trial of any officer of defendant. The latter's own counsel, in concluding his argument to the jury, had insisted that the accident was unavoidable so far as the driver was concerned, and not one for which damages should be assessed against his employer. It is conceded that plaintiffs had made out a case for the jury. Such being true, if defendant was serious in wishing to avoid liability for the death of the deceased it would seem that some one representing defendant might very well have been expected to appear at the trial to evidence an interest in the outcome. It is not claimed that plaintiffs' counsel misstated the facts, and indeed the record itself discloses that defendant introduced not a word of evidence upon the issue of its liability, and under such circumstances we can see no impropriety in the remarks complained of. [Kelso v. W. A. Ross Construction Co. (Mo.), 85 S. W. (2d) 527.]

Finally the point is made that the verdict for plaintiffs for $5,000 is excessive. In making such point defendant is assuming, of course, that there was no evidence of aggravating circumstances attending the accident; and had it been correct in that assumption, so that the verdict would have been limited purely to an assessment of compensatory damages, then there would unquestionably be a very serious question presented as to whether the verdict for $5,000 should be permitted to stand. It is true that there was evidence of certain valuable services rendered by the deceased in and about the home, but when due regard is had for his unfortunate physical and mental condition, it is not at all strange that defendant argues that had he lived he would have been a financial liability rather than a source of gain to his parents.

This court in Ponticello v. Liliensiek, supra, has but recently pointed out the broad discretion with which the jury is invested in determining the amount of damages to be allowed surviving parents for the death of a child of tender years, and the reluctance with which an appellate court will interfere with such a verdict after it has met the approval of the trial court and there is no fair basis for a claim of passion and prejudice on the part of the jury. With due regard for all such considerations, and bearing in mind that in this case there was evidence of aggravating circumstances to have served to augment

the amount of the award, we are not at all persuaded that it would be within our proper functions as an appellate court to interfere with the size of the verdict returned. [Ponticello v. Liliensiek, supra; Kemp v. Doe Run Lead Co. (Mo. App.), 57 S. W. (2d) 758.]

The judgment rendered by the circuit court should be affirmed; and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Hostetter, P. J.*, and *Becker* and *McCullen, JJ.*, concur.