**Leon HALLBERG and Nedra E. Hallberg, Appellants,**

v.

**Enid BRASHER, Appellee.**

No. 81–1974.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1982.

Decided June 3, 1982.

Before LAY, Chief Judge, STEPHEN-SON,* Senior Circuit Judge, and GIBSON,** Circuit Judge.

STEPHENSON, Senior Circuit Judge.

Appellants, plaintiffs in the court below, Leon and Nedra Hallberg brought this diversity action in federal district court [1] under Missouri's wrongful death statute, Mo. Rev.Stat. § 537.080 (1981), to recover damages for the death of their emancipated, adult son, Gregory L. Hallberg. They bring this appeal alleging error in the district court's conduct of their trial. We affirm in part, reverse in part and remand for a new trial on the issue of damages.

At approximately 3:00 p. m., on November 20, 1980, the defendant, Enid Brasher, was driving her automobile west on Chesterfield-Airport Road in St. Louis County, Missouri. The weather was clear, visibility unobscured and the road surface dry. As she approached the "Y" intersection with Old Olive Street Road and attempted to make a left-hand turn thereupon, her automobile collided with that of the decedent, which was traveling eastbound on Chesterfield-Airport Road. Mr. Hallberg was critically injured by the collision and pronounced dead the following day.

Trial was conducted before a jury. On July 23, 1981, judgment was entered in accordance with a verdict for the plaintiffs in the amount of $12,000. The plaintiffs subsequently moved for a new trial on the issue of damages alone or, in the alternative, an entire new trial. This motion was denied on August 24, 1981.

## I.  DISCUSSION

### A.  *Voir Dire*

The first point the plaintiffs raise on appeal is that the trial court erroneously refused their request to voir dire the jury panel regarding any potential bias in favor

Godfrey, Vandover & Burns, Inc., Samuel T. Vandover, St. Louis, Mo., for appellee.

Coleman, Ross, Carey, Goetz & Schaaf, Inc., George E. Schaaf, Dennis J. Curland, Clayton, Mo., for appellants.

---

\* The Honorable Roy L. Stephenson assumed senior judge status after this case was submitted.

\*\* The Honorable John R. Gibson was United States District Judge for the Western District

of Missouri at the time this case was submitted.

1.  The Honorable John K. Regan, Senior United States District Judge for the Eastern District of Missouri, presiding.

of the defendant's insurance carrier. They allege that failure to allow such an inquiry was reversible error and resulted in irreparable injury to their case.

■ We disagree. The specific voir dire question propounded by the plaintiffs was "whether any members had a financial interest in or whether they were employed by *MFA Mutual Automobile Insurance Company*?" (emphasis supplied). This court has stated that voir dire questions regarding a *specific* insurance carrier are generally inappropriate inasmuch as they tend to overemphasize the issue of insurance. *Labbee v. Roadway Express, Inc.*, 469 F.2d 169, 172 (8th Cir. 1972). Furthermore, in this case, voir dire was conducted by counsel rather than by the court. Although the trial court refused the plaintiffs' proffered question, it in no way expressed or intimated a restriction upon their ability to pursue a more generalized line of inquiry regarding insurance, *see Kiernan v. Van Schaik*, 347 F.2d 775, 780–82 (3d Cir. 1965), devoid of any reference to a specific insurance carrier. The trial court's refusal of the plaintiffs' voir dire request was, therefore, well within its sound discretion, *see Labbee v. Roadway Express, Inc., supra*, 469 F.2d at 172.

### B. *Instruction on Aggravated Circumstances*

■ Second, the plaintiffs contend that the trial court erroneously refused to instruct the jury on the issue of aggravated circumstances. In Missouri, the trier of fact, may, in awarding damages for wrongful death, consider evidence of such circumstances. Mo.Ann.Stat. § 537.090 (Vernon Supp.1981). Accordingly, the plaintiffs requested the optional portion of Missouri Approved Jury Instruction (MAI) 5.01 which provides, *inter alia*, "[i]n assessing damages you may take into consideration any aggravating circumstances attendant upon the fatal injury." MAI 5.01 (West 1981). However, this requested language is only to be added "if supported by the evidence." *Id.*, Notes on Use (1981 Revision), n.5. Therefore, our inquiry is limited to whether the district court erred in refusing

the instruction *based upon the evidence adduced at trial*. After considering the transcript and arguments of the parties, we hold that the district court properly refused the proffered instruction.

The Missouri courts have consistently held that aggravating circumstances, as envisioned by section 537.090, entail conduct substantially more reprehensible than ordinary negligence. *See Wiseman v. Missouri Pacific Railroad*, 575 S.W.2d 742, 752–53 (Mo.App.1978); *Williams v. Excavating & Foundation Co.*, 230 Mo.App. 973, 93 S.W.2d 123, 126–27 (Mo.App.1936). *See also May v. Bradford*, 369 S.W.2d 225, 229 (Mo.1963). In *Williams*, the court characterized incremental damages related to "aggravated circumstances" as punitive in nature, therefore requiring a showing of "willful misconduct, wantonness, recklessness, or a want of care indicative of indifference to consequences." *Williams v. Excavating & Foundation Co., supra*, 93 S.W.2d at 127. Contrasted with that standard of proof, "if the evidence shows only that the accident was the result of a want of due care on the part of the defendant * * *, then the case is merely one of negligence and nothing more * * *." *Id.* In *May v. Bradford, supra*, the Missouri Supreme Court held that instruction upon aggravated circumstances was warranted where the defendant, despite knowledge of the proximity of the plaintiff's oncoming vehicle, nevertheless maneuvered his heavily laden truck into the plaintiff's lane of traffic and persisted in his attempt to pass another vehicle on an upgrade curve. *Id.* 369 S.W.2d at 229. The court, therefore, concluded that the jury could have reasonably found the defendant's conduct was "reckless and wanton and in gross disregard of the rights and safety" of the plaintiffs. *Id.*

Here, the plaintiffs alleged that the defendant's act in turning her automobile into the decedent's lane of traffic, despite her earlier sighting of his vehicle approximately one city block away, established the requisite degree of intentional, wanton and reckless misconduct. However, the defendant's uncontroverted testimony also revealed that

the decedent's right-turn signal was flashing at the time she first sighted his automobile, thus indicating to her that the decedent intended to turn off the highway prior to entering the intersection. Therefore, based upon that assumption, she momentarily diverted her attention from the decedent and proceeded in her attempt to turn across his lane of traffic.[2] We agree that the plaintiffs established a prima facie case of negligence premised upon the defendant's failure to maintain a proper lookout and failure to yield the right-of-way. We do not, however, believe that the evidence was sufficient to allow the jury to reasonably consider her conduct to be intentional, wanton and reckless. We affirm the trial court's action. The refusal to instruct upon

aggravated circumstances was entirely proper.[3]

## C. Instruction on Future Damages

The defendants also argue that the trial court erred in refusing to instruct the jury on the proper measure of future damages. Specifically, the plaintiffs requested that the court's wrongful death damage instruction incorporate the optional language of MAI 5.01, *supra*, which expressly allows the jury to assess those damages which the "plaintiff is reasonably certain to sustain in the future." (footnotes omitted). In this case, the plaintiffs argue that this refusal prevented the jury from making an award for future loss of comfort as otherwise provided by the Missouri wrongful death damages statute, section 537.090, *supra*.[4] The

2. As elicited from the defendant during her direct examination:

Q Did you observe anything about his [the decedent's] car with reference to any lights and whether or not any lights were on or off or operating?
A He was signaling a right turn.
Q And what did you see that caused you to conclude that?
A His right blinker was on.
    * * * * * *
Q Now, when you saw his automobile at that time, what then did you do?
A Well, that's when I started slowing down because I thought I might have to stop and then when I really assured myself that his blinker was on why, I knew I would have the right of way, so I speeded up a little.
    * * * * * *
Q And did you have occasion to observe his automobile travel from the point where he was when you first saw it, up to the point where you were when your car and his car collided?
A Well, I saw him until I determined that he was possibly going to turn right; then I didn't keep my attention on him any more.

3. The plaintiffs place substantial emphasis upon the Missouri Court of Appeals decision in *Wiseman v. Missouri Pacific R. R.*, 575 S.W.2d 742 (Mo.App.1978), but their reliance upon that case is misplaced. In *Wiseman*, instruction upon aggravating circumstances was deemed appropriate in a trial involving the collision of a locomotive and a pedestrian. The evidence presented at trial disclosed that not only did the locomotive brakeman first observe the pedestrian in a position of *immediate danger*, but he then proceeded to look away. Further, the railroad had altogether failed to instruct the brakeman in the operation of a readily availa-

ble, emergency valve, the only mechanism which could have averted the collision. *Wiseman v. Missouri Pacific R. R.*, *supra*, 575 S.W.2d at 753. Additionally, the court's decision appears to have been substantially influenced by its declaration that "[t]rains are extremely dangerous instrumentalities * * *." *Id.*

None of these factors are applicable in the present case.

4. In every action brought under section 537.-080, the trier of the facts may give to the party or parties entitled thereto such damages as the trier of the facts may deem fair and just for the death and loss thus occasioned, having regard to the pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training and support of which those on whose behalf suit may be brought have been deprived by reason of such death and without limiting such damages to those which would be sustained prior to attaining the age of majority by the deceased or by the person suffering any such loss. In addition, the trier of the facts may award such damages as the deceased may have suffered between the time of injury and the time of death and for the recovery of which the deceased might have maintained an action had death not ensued. The mitigating or aggravating circumstances attending the death may be considered by the trier of the facts, but damages for grief and bereavement by reason of the death shall not be recoverable.
Mo.Stat.Ann. § 537.090 (Vernon Supp.1981).

defendant, on the other hand, argues that as with the "aggravated circumstances" instruction, this "reasonably certain" language is only to be added if supported by the evidence, *see* MAI, *supra*, § 5.01, Notes on Use (1981 Revision), n.5.

The question, therefore, to be resolved is whether the plaintiffs' evidence was sufficient to support an instruction on future damages. The issue is apparently one of first impression since the Missouri legislature's revision of section 537.090 in 1979. Although we regard the question as close, we nevertheless reverse the decision of the trial court.

Prior to the revision in 1979, the Missouri courts had interpreted section 537.090 as precluding parental recovery for pecuniary benefits resulting from the continued life of a child beyond the age of majority. *E.g., Oliver v. Morgan*, 73 S.W.2d 993 (Mo.1934). However, in the 1977 decision of *Mitchell v. Buchheit*, 559 S.W.2d 528, 531–33 (Mo.1977) (en banc), the Missouri Supreme Court judicially shifted Missouri to a position in accord with the majority of states, holding that parents suing for the death of a minor child could recover for the reasonably probable pecuniary benefits owing to the continued life of the child beyond the age of majority. In 1979, the Missouri legislature responded by amending section 537.090, apparently in conformance with the *Mitchell* opinion, *see* Note, *Missouri's New Wrongful Death Statute—Highlights of Some Significant Changes*, 45 Mo.L.Rev. 476, 484 (1980), so as to specifically provide for wrongful death recovery "without limiting such damages to those which would be sustained prior to attaining the age of majority by the deceased or the person suffering any such loss * * *." In addition, the legislature also amended section 537.090 to expressly allow the recovery of damages for loss of comfort and companionship.[5] There are no reported Missouri decisions which discuss the significance of these statutory amendments.

Despite these revisions, the approved Missouri wrongful death damage instruction retained the proffered "reasonably certain" language, allowing for its *optional* inclusion dependent upon sufficient evidentiary support. This instruction, and the attendant Notes on Use, were specifically reviewed and approved by the Missouri Supreme Court on May 12, 1981, MAI at XXI (West 1981), subsequent to the amendment of section 537.090. Presumably, therefore, the optional, rather than mandatory, character of this portion of the instruction is fully consistent with the Missouri Court's reading of the statute.

The difficulty in this case is that there was very little, if any, *direct* evidence to substantiate an award for future loss of comfort and companionship. The decedent was twenty-seven years old at his death. He had graduated from college in 1975 and lived with his parents in St. Louis, Missouri for two and one-half years following graduation. Eventually, in 1977, due to an employment-related transfer, his parents moved to Ohio. The decedent, however, maintained his residence in Missouri where he was employed until his death in 1980.

Nedra Hallberg, mother of the decedent, testified that during the period her son lived with her and her husband, he performed typical household chores for the family including lawn work, cooking and painting. Furthermore, following the Hallbergs' move to Ohio, the decedent maintained reasonably close ties with his parents. Mrs. Hallberg testified that despite their separation, he frequently wrote letters, called them on the telephone, sent cards for birthdays and anniversaries and usually attended family gatherings. The decedent did not, however, provide any direct financial support for his parents of a substantial or continuing nature.

---

5. Prior to this revision, wrongful death recovery was generally limited to "necessary" pecuniary losses computed without regard to lost comfort or companionship. *See, e.g., Caen v. Feld*, 371 S.W.2d 209, 211 (Mo.1963); *Szofran v. Century Electric Co.*, 255 S.W.2d 443, 450 (Mo.App.1953). *But see Wyatt v. United States*, 610 F.2d 545 (8th Cir. 1979) (per curiam) (affirming district court award under Missouri law for loss of consortium).

■ We think this evidence, although arguably short of establishing direct, conclusive proof of loss of future comfort and companionship, was nonetheless sufficient to justify plaintiffs' request for an instruction on "reasonably certain" future damages. In our view, loss of future comfort and companionship is an element of damages in wrongful death actions, which like pain, suffering and mental anguish, is only rarely supported by direct, tangible evidence. In this regard, the Missouri courts have held that inasmuch as physical pain and mental suffering are elements which necessarily flow from physical injury, they do not require specific proof for recovery thereon. *Mullendore v. Gentry*, 377 S.W.2d 494, 497 (Mo.App.1964). Similarly, we find it equally probable that within a reasonably close, familial relationship, the loss of an adult child will necessarily bring about an attendant future loss of comfort and companionship on behalf of the decedent's parents thereby obviating the need for specific, direct proof of such injury. Although we do not intend to judicially rewrite the optional character of the plaintiffs' proffered instruction out of the Missouri approved instructions, where, as here, the evidence shows the existence of a reasonably close and normal, familial relationship between an adult child and its parents, specific, direct proof of loss of future comfort and companionship should be unnecessary to support an instruction on future damages.[6]

■ Our decision on this issue is further supported by the fact that the district court allowed the plaintiffs to argue the calculation of future damages before the jury. The tests for propriety of a particular jury instruction and closing argument are essentially the same; both must be supported by sufficient evidence. *Compare Certa v. Associated Building Center, Inc.*, 560 S.W.2d 593, 596–97 (Mo.App.1977), *with Harrison v. Weller*, 423 S.W.2d 226, 231 (Mo.App.1967). While there may indeed be instances where a trial court acts within its discretion in authorizing closing argument, without objection, upon an issue for which specific jury instruction is refused, in this case, we can find no justifiable distinction between the test of "sufficiency" called for by footnote 5 to MAI § 5.01, and that applied to authorizing closing argument on the issue of loss of future comfort and companionship.[7]

■ However, despite our conviction that the plaintiffs' instruction was erroneously refused, such error is not reversible *per se* but must be judged by the standard of "harmless error" established under rule 61 of the Federal Rules of Civil Procedure. Specifically, errors in jury instructions are reversible only if they adversely affect the substantial rights of the complaining party. *E.g., Flanigan v. Burlington Northern Inc.*,

6. It must also be remembered that in determining whether the evidence is sufficient to support the giving of a particular instruction, the evidence should be considered in the light most favorable to the party offering the instruction, giving it "the benefit of all favorable inferences reasonably deducible therefrom." *Underwood v. Crosby*, 447 S.W.2d 566, 570 (Mo.1969) (en banc); *see Strudl v. American Family Mutual Insurance Co.*, 536 F.2d 242, 246 (8th Cir. 1976) ("A litigant is entitled to have the jury charged concerning his theory of the case if there is any evidence to support the claim, direct or circumstantial."). Here, despite the lack of direct evidence of a loss of future comfort and companionship, the benefit of all reasonable inferences weighs heavily in favor of the giving of the plaintiffs' proffered instruction.

7. In accordance with MAI 5.01, Committee's Comment (1981 Revision), specific instruction on the individual elements of damages was not

provided. Rather, the parties were allowed to argue these issues to the jury. However, in our opinion, failure to instruct on future damages did not make it clear to the jury that such damages could be considered.

The defendant argues that any alleged error occasioned by the trial court's refusal to properly instruct the jury on the issue of future damages was rendered harmless inasmuch as the court allowed plaintiffs' counsel to address the requested issue in closing argument before the jury. We find this point to be without merit as well. Where supported by sufficient evidence, "a party is entitled to have the jury instructed upon his theory of the case. Opening statements or *closing arguments of counsel are not to be relied upon as a substitute for proper jury instructions.*" *Alloy International Co. v. Hoover-NSK Bearing Co.*, 635 F.2d 1222, 1226 (7th Cir. 1980) (emphasis added).

632 F.2d 880, 889 (8th Cir. 1980), *cert. denied*, 450 U.S. 921, 101 S.Ct. 1370, 67 L.Ed.2d 349 (1981). In ascertaining whether substantial rights have been affected, we look to the record as a whole, considering the allegations of the complaint, opening statements, the evidence, closing argument and the instructions. *Alloy International Co. v. Hoover-NSK Bearing Co.*, 635 F.2d 1222, 1226 (7th Cir. 1980). Furthermore, the error should be evaluated in light of the verdict. *See Kotteakos v. United States*, 328 U.S. 750, 764, 66 S.Ct. 1239, 1247, 90 L.Ed. 1557 (1946). *See generally* 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2883 (1973).

▮ In this case, the jury's verdict of only $12,000 appears to have been prejudiced to a substantial degree by the trial court's error in refusing the plaintiffs' future damages instruction. The case was submitted upon a stipulation that the plaintiffs had suffered damages of at least $11,692.97 representing their expenses for the decedent's last illness and funeral. Furthermore, the plaintiffs' medical expert testified that, prior to delivery to the hospital, the decedent did suffer some amount of pain and suffering although of an unknown exact duration. Both of these elements of damages are recoverable by the plaintiffs under section 537.090 and were expressly argued to the jury in closing argument.

The difference, therefore, between the jury verdict of $12,000 and the stipulated damages alone amounts to only $307.03. The plaintiffs argue that this sum represents a grossly inadequate verdict and compensation for both loss of comfort and companionship as well as pain and suffering. Although we share their reservations as to the fundamental adequacy of the jury award, we need not directly resolve that issue for we hold that, in view of the evidence, the jury instructions and the verdict, the trial court's failure to expressly instruct on future damages substantially affected the rights of the plaintiffs. The judgment must be reversed accordingly.

▮ Having established the reversible nature of the trial court's instruction, the only remaining issue for resolution is whether to limit the new trial to the issue of damages or to reopen the merits as well. *See Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931); *Greenwood Ranches, Inc. v. Skie Construction Co.*, 629 F.2d 518, 522 (8th Cir. 1980). In this case, the record amply supports the jury's finding of liability.[8] Additionally, the issue of damages is not so interwoven with that of liability as to necessitate a new trial on both. *See Greenwood Ranches, Inc. v. Skie Construction Co., supra*, 629 F.2d at 522. Therefore, we remand the case for a new trial limited to the issue of damages.[9]

Affirmed in part, reversed in part and remanded.

---

8. The issue of contributory negligence was not submitted to the jury.

9. The plaintiffs also appeal the trial court's exclusion of several evidentiary matters. Although we find their specific points to be without merit, because these issues may arise again upon retrial, we briefly note them in passing.

   Fundamentally, it is incumbent upon counsel, appealing the exclusion of evidence, to preserve their appeal through a satisfactory offer of proof. *See Yost v. A. O. Smith Corp.*, 562 F.2d 592, 594–95 (8th Cir. 1977). With respect to evidence of the plaintiffs' reasonable life expectancies, the decedent's income and employment opportunities, as well as his active involvement in scouting, no such offer of proof was provided by plaintiffs' counsel. Further, the plaintiffs' ages, without proof of life expectancy, were properly excluded. Lastly, we can find no error in the trial court's exclusion of the evidence regarding the decedent's periodic payment of room and board to the plaintiffs or the plaintiffs' loan of $2,500 to the decedent.