Dorothy C. CONTESTIBLE, Administratrix of the Estate of Ralph Burton Collings, Deceased, Respondent,

v.

W. A. BROOKSHIRE, Appellant.

No. 48581.

Supreme Court of Missouri,

Division No. 1.

Jan. 8, 1962.

Motion for Rehearing or to Transfer to Court en Banc Denied March 12, 1962.

W. A. Brookshire, Columbia, Richard K. Phelps, Kansas City, for appellant.

Edwin C. Orr and Carl F. Sapp, Orr & Sapp, Columbia, for respondent.

PER CURIAM.

Action under the Wrongful Death Act, sections 537.080 and 537.090, RSMo 1949, V.A.M.S., for $25,000 damages for the death of Ralph Burton Collings who, according to the petition filed by his daughter, the administratrix of his estate, was wrongfully and maliciously shot and killed by defendant. Ten members of the trial jury returned a verdict for plaintiff for $17,000.

Defendant has appealed from the judgment rendered on the verdict.

Plaintiff's petition recited Collings' death, plaintiff's appointment as administratrix of the estate of deceased, and plaintiff's and her brother's survivorship and heirship; charged that on May 25, 1959 on defendant's farm in Boone County defendant wrongfully and maliciously killed Collings by shooting him with an automatic pistol; alleged that Collings contributed from his earnings and labor to the support of plaintiff; that the killing was of an aggravated and malicious character, and prayed for actual and exemplary damages in the total sum of $25,000. Defendant's answer denied the killing was malicious and wrongful and alleged that "defendant was acting in the defense of his dwelling when the said Ralph Burton Collings was in the commission of a felony in said dwelling and was further acting in the defense of his own life and under Section 559.040 RSMo 1949 these acts constituted justifiable homicide."

■ Defendant contends that the circuit court lacked jurisdiction because the Probate Court of Boone County had no authority to issue letters of administration; that section 473.010, RSMo 1949, V.A.M.S., provides that letters of administration shall be granted in the county in which the domicile of the deceased is situated, or if he had no domicile in this state, in any county wherein he left any property; that deceased resided at plaintiff's home in the City of St. Louis, and possessed no property whatever. Plaintiff's application for letters stated that the "last residence" of deceased was Boone County. The Probate Court of Boone County found that deceased was "late of the County of Boone," and issued letters of administration on his estate, appointing plaintiff as administratrix. The probate court's determination of deceased's residence is the judgment of a court of record, valid until vacated, Thompson v. Kansas City, C. C. & St. J. Ry. Co., 224 Mo.App. 415, 27 S.W.2d 58, or set aside in a direct proceeding, In re Davidson's Estate, 100 Mo.App. 263, 73 S.W. 373, the verity of which is conclusive against collateral attack by proof that deceased was a resident of another county. In re Sheldon's Estate, 354 Mo. 232, 189 S.W.2d 235; State ex rel. Gott v. Fidelity & Deposit Co., 317 Mo. 1078, 298 S.W. 83; Johnson v. Beazley, 65 Mo. 250; In re Greening's Estate, 232 Mo.App. 78, 89 S.W.2d 123.

■ On the merits, defendant contends initially that plaintiff failed to prove her case because the evidence offered by plaintiff, coupled with the cross-examination of defendant, "clearly establishes that the killing was justifiable homicide." Since defendant admitted in his answer, on the stand and in oral argument that he shot and killed deceased (not under any claim of accident or misfortune, but intentionally), we need not review the evidence to determine whether plaintiff made a submissible case of intentional killing independent of defendant's admissions. Unquestionably a case was made on defendant's admissions, unless plaintiff is bound by the testimony of defendant that the killing was justifiable. Nor is there any necessity under this point to review defendant's testimony as to the facts surrounding the killing. Suffice it to say that defendant testified to facts which, if believed, tended to show defendant killed Collings under justifiable circumstances. The decisive first question, therefore, is whether plaintiff is bound by defendant's testimony in justification. If so, defendant's motion for a directed verdict should have been sustained.

■ Plaintiff called defendant as an adverse witness for the limited purpose of establishing defendant's wealth and financial standing on the issue of punitive damages. Plaintiff asked defendant no questions except with respect to his financial standing. At the conclusion of defendant's testimony on this limited issue the court permitted defendant's counsel to cross-examine defendant in great detail as to the facts and circumstances surrounding the killing. After defendant's recital of his

version of the facts surrounding the killing, counsel for plaintiff did not examine defendant further nor did plaintiff introduce any evidence to impeach, contradict or rebut the facts testified to by defendant in justification. Since defendant's testimony in justification was given after he had been called to the stand as a witness for plaintiff, defendant claims plaintiff thereby vouched for defendant's credibility and was bound by defendant's uncontradicted and unimpeached testimony that defendant shot and killed Collings under justifiable circumstances; that this testimony completely destroyed plaintiff's case and entitled defendant to a directed verdict. Defendant's claim is without foundation. "What he (defendant) said in his own behalf did not in any way bind the plaintiff. Where a party desires to prove an essential element of his case by his opponent, he is permitted to do so, and he is only bound by that part of his adversary's testimony for which he vouches for as the truth and he is free to show facts contradictory of all other testimony given by the adverse party. Lolordo v. Lacy, 337 Mo. 1097, 88 S.W.2d 353, loc. cit. 355; Richeson v. Roebber, 349 Mo. 132, 159 S.W.2d 658, 141 A.L.R. 1; Missouri Cafeteria v. McVey, 362 Mo. 583, 242 S.W.2d 549." Hall v. Brookshire, Mo.App., 285 S.W.2d 60, 64. (Parentheses supplied.)

Next, defendant claims reversible error was committed in the giving of Instructions Nos. 1, 2, 3 and 4.

No. 1 instructed that the jury was not required to find that deceased met his death at the hands of defendant, because the shooting and killing of deceased was admitted by defendant; that if the jury found that plaintiff was the duly appointed administratrix and that the killing was without just cause or provocation and not done in the defense of defendant's person or dwelling; and found the survivorship of a son and a daughter and that plaintiff "was receiving pecuniary benefits from and contributed by" deceased "in the form of money, tasks performed by deceased and

services rendered by him," then the jury should find a verdict for plaintiff and against defendant. Defendant's objections to No. 1 are that it does not properly declare the law "in that the jury is told that they did not need to find that the defendant killed the deceased"; that No. 1 fails to instruct "that the burden was upon the Plaintiff to prove beyond a reasonable doubt that the Defendant had committed the crime of murder" and that the killing was done from a criminal intent; that there was no evidence of the commission of a crime or of a malicious killing; that the statement in No. 1 with reference to pecuniary benefits confused the jury; and that No. 1 "failed to inform them of the burden of proof upon each and every issue." We find no fault with Instruction No. 1. Defendant's admissions that he intentionally killed Collings made a prima facie case for plaintiff, dispensing with the necessity of plaintiff proving or the jury finding that fact. It would have been error to instruct the jury that the burden of proof was upon plaintiff to prove beyond a reasonable doubt that defendant committed the crime of murder. This is a civil case. The burden of proof in such a case is by a preponderance of the evidence, not beyond a reasonable doubt. Plaintiff was not required to establish criminal intent or the crime of murder. Plaintiff, suing under the Wrongful Death Act, section 537.080, RSMo 1949, V.A.M.S., was only required to establish the death of Collings "by a wrongful act." The intentional killing of a human being is a wrongful act, unless it is done under circumstances which justify or excuse homicide. No. 1's reference to the pecuniary benefits which plaintiff had been receiving from her father is not confusing, as charged. No. 1's failure to "set out the amount of money furnished or the value of the services rendered * * * nor the manner in which such damages were to be ascertained," is not error. It was not necessary to include these elements in No. 1. The measure of damages was dealt with in separate instructions. Nor was No. 1 er-

roneous in failing to inform the jury of "the burden of proof upon each and every issue." The burden of proof was properly instructed upon in separate Instructions Nos. 2 and 3.

■ Defendant's objection to Instruction No. 2, which instructed that the burden was upon plaintiff to prove her case by the preponderance of the credible evidence, is that it "left with the jury the authority or power to determine the greater weight or preponderance of the evidence," and that the concluding part of No. 2 (telling the jury that if the evidence preponderated in plaintiff's favor, this would be sufficient to sustain the burden of proof) was unnecessary, unwarranted, confusing and misleading. This criticism is insubstantial. It is fundamental that in a civil case it is the proper province and function of the jury to determine where the greater weight or preponderance of the evidence lies, and the concluding part of the instruction is a correct statement of law.

■ Defendant assails Instruction No. 3 on the ground that it "clearly casts upon the Defendant the burden of proof and informed the jury that the burden of establishing the guilt of the Defendant was not upon the Plaintiff but rested upon the Defendant himself, which is contrary to both the civil and criminal burden of proof." Justification is an affirmative defense; a plea in the nature of a confession and avoidance. Matters constituting an avoidance or affirmative defense must be affirmatively pleaded, section 509.090 RSMo 1949, V.A.M.S., Prewitt v. Witte, 224 Mo. App. 836, 26 S.W.2d 1020, and the burden of proof on all affirmative defenses rests upon the defendant, as the asserting party. Gennari v. Prudential Insurance Company of America, Mo.Sup., 335 S.W.2d 55, 60; Rucker v. Alton R. Co., 343 Mo. 929, 123 S.W.2d 24; 31 C.J.S. Evidence § 104, p. 711. The burden was upon defendant to prove his affirmative defense of justification. Judge Lamm expressed it this way, in Morgan v. Mulhall, 214 Mo. 451, 114

S.W. 4, l. c. 6: "[A] plaintiff, hit by a bullet, may identify the shooter, prove the hit, and quit. At that point the burden [of going forward] shifts, and the law, as well as the good sense of it, puts the boot on defendant's foot and the laboring oar in his hands—he must justify or otherwise lawfully excuse the shot." (Brackets supplied.) No. 3 properly fixes upon defendant the burden of proof with respect to the affirmative defense of justification.

■ Defendant attacks Instruction No. 4, on actual and punitive damages, which concluded as follows: "The Court further instructs the Jury that if you find a verdict for the plaintiff that your verdict must be in one lump sum * * *." Defendant claims that No. 4 constituted a roving commission to find the value of deceased's assistance to plaintiff, erroneously directed the jury to find in one lump sum, instead of assessing actual and punitive damages separately, "wholly fails to declare the law governing actual and punitive damages in a wrongful death action." Neither in his point nor in the argument does defendant elucidate or explain his charge that No. 4 constitutes a roving commission, or demonstrate in what respect No. 4 fails to properly declare the law in this type of action. Accordingly, our review is limited to the allegedly improper direction of No. 4 that the jury return a lump sum verdict without separate assessment of actual and punitive damages. Cooksey v. Ace Cab Company, Mo.Sup., 289 S.W.2d 40; Lewis v. Watkins, Mo.App., 297 S.W.2d 595. Section 509.200 RSMo 1949, V.A.M.S., provides that "In actions where exemplary or punitive damages are recoverable, the petition shall state separately the amount of such damages sought to be recovered." Section 510.270 RSMo 1949, V.A.M.S., provides that " * * * When exemplary or punitive damages are allowed by the jury, the amount thereof shall be separately stated in the verdict." These sections, however, have no application to a proceeding under the wrongful death statutes. Spalding v. Robertson, 357 Mo. 37, 206 S.

W.2d 517, and authorities cited, 1. c. 521, [4]. Section 537.090 RSMo 1949, V.A. M.S., as amended Laws 1955, p. 778, § 1, provides that "In every action brought under section 537.080, the jury may give to the surviving party or parties who may be entitled to sue such damages, not exceeding twenty-five thousand dollars, as the jury may deem fair and just for the death and loss thus occasioned, with reference to the necessary injury resulting from such death, and having regard for the mitigating or aggravating circumstances attending the wrongful act, neglect or default resulting in such death." Under this statute any amount above compensation is penalty, La Bella v. Southwestern Bell Telephone Co., 224 Mo.App. 708, 24 S.W.2d 1072, 1077, and it is a matter within the discretion of the jury to say how much compensation and how much penalty in the aggregate shall be awarded. There is no requirement, by statute or decision, that the trial court direct the jury to separately state the amount of the actual and punitive damages to be awarded in wrongful death actions. The decided case law is to the effect that these amounts need not be separately stated. La Bella v. Southwestern Bell Telephone Co., supra. The court did not err in directing the return of a lump sum verdict in this case.

 Next, defendant claims reversible error was committed in refusing to give defendant's proffered Instructions Nos. 8 and 9.

No 8 instructed the jury that under the law and evidence "plaintiff is not entitled to recover punitive damages." Defendant's objection is that "there was an utter and entire absence of any evidence whatever justifying the submission of the issue of punitive damages to the jury." We are of the opinion that the submission was proper; that there was ample evidence to sustain the submission of malicious killing without just provocation. Eliminating defendant's theory of violent invasion of defendant's home and violent assault on de-

fendant's person, which the jury had the right to disbelieve, there was no lawful provocation. During the few weeks Collings had lived and worked on defendant's farm, he had done some painting on defendant's house. Defendant, dissatisfied, claimed to have been damaged to the extent of $50 by Collings' use of the wrong type of paint. Collings had taken a $20 bill defendant gave him and gave it to a woman who came to the farm to get paid for some hay. Collings felt that defendant "should give him that $20 back," and had mentioned it to defendant "a time or two." Defendant claimed that he gave Collings the custody of a blind, registered cow to feed and care for but that because of Collings' neglect the cow, worth $300, had died. The arrangement between defendant and Collings had become unsatisfactory to defendant. Although they "had no arguments" and defendant said the relationship was "very pleasant," defendant did not consider Collings a "valuable hand." On the morning of May 25, 1959 defendant told Collings he expected the latter to leave. Collings said "Well, I will leave when you pay me what you owe me." Defendant retorted, "I don't owe you anything," claiming that he had paid Collings for all services rendered. The foregoing, testified to by defendant, was uncorroborated. Collings was 63 years old, of slight build, five feet four inches in height, 135 pounds in weight. He was not a strong man. He was a mild mannered man who had never been known to harm, attack or fight with anyone or to have been in any trouble, either with the police or other persons. It stands admitted that defendant shot Collings to death with an automatic pistol, using five separate bullets. At least two of the bullets tore into the vital parts of Collings' body in such a manner as to cause unconsciousness and death almost instantly. After the killing defendant drove 11 miles to town, picked up his mail at the post office, and then called the sheriff's office, telling the officer in charge there was a dead man down at his house and that

he "wanted somebody to come down there sometime that day." Defendant's testimony in justification was that Collings threatened to kill defendant, broke into his house brandishing a five-pound hammer in his hand, advanced upon defendant swinging the hammer in a menacing manner and in close proximity to defendant's head, striking glancing blows upon defendant's shoulder and hand; that defendant retreated from the kitchen to the dining room, and finally shot Collings in order to save his own life. The jury, however, had the right to disbelieve, State v. Brookshire, Mo. Sup., 353 S.W.2d 681 (handed down concurrently herewith), and evidently did disbelieve, defendant's testimony in justification. That testimony eliminated, and given defendant's admissions that he shot and killed a mild and innocuous person, there was nothing left but defendant's account of the foregoing trivial disagreements to justify the killing. This constituted no lawful provocation for the killing and consequently there was no error in submitting malicious killing without just provocation.

Refused Instruction No. 9 stated that "when a witness is called the party calling the witness vouches for the credibility of such witness and is bound by the testimony given unless there is testimony given by other witnesses that contradicts the evidence given by the witness called." Defendant repeats his contention that plaintiff was bound by defendant's testimony in justification by placing defendant on the stand and examining him at length on his life, education, financial standing and worth; by "participating" in defendant's cross-examination of defendant, and by failing to offer evidence contradicting or casting doubt upon defendant's testimony given in justification. Defendant says the court should have given No. 9, by which the jury would have been instructed that plaintiff was so bound. The quotation from Hall v. Brookshire, Mo.App., 285 S.W.2d 60, 1. c. 64, supra, disposes of this contention adversely to defendant's contention.

Defendant seeks a reversal of the judgment for refusal to discharge the jury because of a remark made by one of the jurors during defendant's final argument. By Instruction No. 5 the jury had been told that if Collings forcibly entered defendant's home and assaulted defendant with a hammer defendant was not obliged to retreat, but was privileged to defend his home and use the means absolutely necessary to repel Collings. In discussing No. 5 and its reference to forcible entry defendant argued "—well, he [Collings] did forcibly enter; he broke the glass in the back door and—." At this point a juror interrupted and said "That's what you say he did. He's dead. How ya gonna prove it?" Defendant did not object to the juror's interruption or ask the court at that time to take any affirmative action. On its own initiative the court admonished the juror not to interrogate counsel, and directed the defendant to "go ahead." Defendant proceeded to complete his argument, making no reference to the incident until he finished, at which time, out of the hearing of the jury, he moved for a mistrial on the ground that the juror had "made up his mind or is prejudiced" and that defendant could not have a fair and impartial trial with a man like that on the jury. The court denied the motion. The juror who asked the question did not join in the ten-member verdict. This point is disallowed for two reasons. First, defendant waived the objection by not objecting at the time of the occurrence to the alleged misconduct of the juror. Second, the propriety of a mistrial for alleged misconduct on the part of a juror rests largely within the discretion of the trial court. The court, with the jurors before it, was in an advantageous position to determine whether the remarks of the juror had any effect on or prejudiced defendant's rights. The court did not regard the incident as significant. There is nothing in the remarks themselves or in the circumstances under which they were made indicating that the court abused its discretion in not

taking further action than it did when it indicated its disapproval of the juror's interrogation. Robb v. Bartels, Mo.App., 263 S.W. 1013, 1016.

■ Defendant says the jury should have been discharged because of an argument made by plaintiff's attorney, which defendant brands as improper, prejudicial and untruthful. Plaintiff's attorney, referring to defendant's previous argument, told the jury "Mr. Brookshire said to you that we vouch for him and for the truth of what he says. Nothing could be further from the truth!" Defendant objected on the ground that a party putting a witness on the stand vouches for his credibility. The court overruled and permitted plaintiff's counsel "to respond to the argument that was made by the defendant." It is the policy of the law to indulge a liberal latitude in argument, especially where the argument is a fair retort to the preceding argument of opposing counsel. Riley v. St. Louis Public Service Co., Mo.App., 245 S.W.2d 666, and cases cited, l. c. 673. Defendant had argued that "It is as clear as the noonday sun" that when you place a witness on the stand you vouch for his credibility and status. "They put me on the stand. * * * They vouched for my credibility." Defendant's argument was a partial misstatement of the law of this case. Plaintiff placed defendant on the stand for the limited purpose of testifying as to defendant's wealth. Plaintiff did not thereby vouch generally for defendant's credibility as a witness, or for the truth of defendant's testimony in justification of his taking Collings' life, as defendant sought to tell the jury, but only sought admissions bearing on a single issue. The argument made by plaintiff's counsel, provoked by and in answer to defendant's improper argument, was within bounds and the court properly allowed plaintiff's counsel to make it.

■ Defendant's final point is that "The Court committed reversible error in permitting the introduction of Plaintiff's evidence which was obtained without a search warrant and without the consent of the Appellant." This is wholly insufficient to preserve anything for review. It fails to particularize and specify what evidence should not have been admitted. Nibler v. Coltrane, Mo.Sup., 275 S.W.2d 270, 274 [5]. Going to the argument, however, we find that defendant's complaint relates to a revolver and hammer, which were removed from defendant's house without a search warrant and without his consent. The admission of the gun in evidence was not error because the gun was obtained in the course of a search incidental to a lawful arrest. State v. Brookshire, supra. (The facts held sufficient to justify the action of the officers in the criminal case are the same as in this civil case.) Furthermore, when the gun was offered in evidence defendant said: "I admit that it is my gun and I admit that it is the one I used." These voluntary admissions destroyed defendant's right to now insist upon the protection of his constitutional guaranties, for defendant thereby admitted every fact that plaintiff sought to show by using the evidence, namely, that he owned the gun and used it to kill Collings, and cannot now complain that the gun was obtained by an unlawful search and seizure in the first instance. State v. Brookshire, supra; State v. Smith, 357 Mo. 467, 209 S.W.2d 138, 140; State v. Bray, Mo.App., 278 S.W. 2d 49, 52. In no event could the admission of the hammer in evidence have prejudiced defendant. It was defendant's theory that the hammer was used by Collings as a weapon in his alleged attack upon defendant. Certainly it would not hurt defendant's case to exhibit the hammer to the jury.

No error appearing the judgment is affirmed.

All concur.